The President
delivered the opinion of the Court.
The first objection made to the report is, that the paper money is reduced by the scale of depreciation, on the day it was received by the executor. Upon general principles, such a rule would certainly be improper and unjust; and especially too, when the money was received in a state of rapid depreciation.
The executor may not be able to find a creditor, or legatee, to whom he could pay the money, on the day it was received, or the payment might be suspended, in some cases, by disputes amongst creditors for the preference.
*320 But, in this case, the appellant has neither objected to m°de originally, nor pointed out any other, the propriety of which might be. considered by the Court on the contrary, his accounts were stated by himself jn the same manner, the debits and credits being reduced by the scale on the day they were received and paid. He ought, therefore, to be bound by this mode, and the Chancellor did right in over-ruling this exception.
The second objection is to the charge of interest, as if the executor were a debtor, or had received or retained the money improperly. It is contended, that such a charge, at the time it was made, is peculiarly unjust, as there were then no borrowers of good credit to be met with ; and that the executor neither did, nor could, derive a profit from it.
There are no facts disclosed in the record which can throw light upon this subject. The bill is silent as to interest, and so is the answer, except that part of it, where (speaking of the paper money which he scaled,) he states the injury arising from considerable sums having been on hand, from time to time, lessening every day in their value, without benefit to him, and without an opportunity of paying it away. Thus the question stands upon the face of the accounts. It is true, that there is no general rule which obliges an executor to pay interest. We find from the cases upon this subject, that it has been determined both ways; and, upon principle, it will appear that no general rule can be formed.
Each case must depend upon its own particular circumstances; in some cases, the executor ought, and, in others, he ought not, to answer interest. In this, we think he ought to be accountable for interest, on the money resting in his hands from time to time. But, for the reasons before stated, in considering the first point, itwould be too rigid and injurious to charge him with interest from the day of each receipt of money. The accounts ought to be closed at the end of each year, and interest allowed upon theJdifferent balances, up to the year 1782, when the whole transae *321 lion closed. But such interest ought not to be carried to the account of the succeeding years, in order deduct the same from the payments made in such succeeding years. This, though done in the common eases of debtors, is too strict as to trustees.
As to the risk stated at the bar, or the difficulty of procuring borrowers, it is an objection which does not come from the executor, nor is it stated by him in his answer, but is mentioned in argument as a possible case. But if it were true, he might have applied to the Chancellor for his direction as to lending it to individuals, or to the public, which would have made him safe; or he might have carried the money into that Court. In this case, there were children whose fortunes were almost entirely pecuniary. It would, therefore, be unjust that the money should lie in the executor’s hands unproductive, so as to deprive the legatees of maintenance, or oblige them to resort to the principal of their legacies.
If the executor does not settle his accounts every year, he ought at least to strike the balance at the end of every year, that he may see the state of his accounts, and of the funds in his hands. It is upon this principle that we establish the rule before mentioned.
In stating this interest, the appellant ought to have credit for the 500/. in 1773, which, by the will, was directed to be lent him without interest, and to be recharged with it in 1778, when the loan was to cease.
The third objection is made on the score of commissions.
An executor is certainly entitled to some compensation for his trouble, and that, by custom, is generally fixed at fivq per cent, upon actual receipts. But it is objected that the legacy left to him is a bar of all further compensation. The rule, that a legacy given to an executor defeats his claim to the undisposed residuum, is assimilated to the point under consideration. But that principle seems to be much mistaken in the application made of it. It is .unnecessary for us to give an opinion upon that point, as, in this case, there is no surplus; yet it may be observed, that if *322 there were such a residuum, the legacy would be no bar, as there were several executors, to all of whom unequal legacies are given, and so this Court decided in the case of Shelton v. Shelton. The present question therefore, like all others of this nature, depends (as to the amount to be allowed,) upon the custom, and the intention of the testator. He clearly meant to allow an adequate compensation. To one executor, he gives 250/.', and lest that should be an insufficient recompense for his trouble, he authorises, the other executors to increase it, if necessary. In the codicil, he gives the appellant (who is not named an executor in the will itself,) a legacy, as being his nephew, and to this, he would have been entitled, though he had refused the office. It would seem, as if the testator did not at first mean to make him an executof, by his directing his executors, to lend him 500/ without interest. So that it is evident, he never intended the legacy as a compensation for his services, but merely as a bounty. The appellant therefore, ought to have credit, for.five per cent, commission on his receipts of each year, before the accounts are closed, in order to adjust the interest as before mentioned.
As to the fourth point, the Court entertain some doubt, whether the 500/. ought to be charged to the appellant at all, or not?
In the exceptions, it is stated as a debt due from the appellant, to the testator, and paid in. 1778,—in his account, he gives credit in October 1111, for this sum, as due in 1778, and reduces it by the scale of October 1777. He is charged with it by the Commissioners, in 1778, as cash, had five years, without intérest, and then due; in which case, he ought not to be charged with it, unless he received it in other money, than what came to his hands by collection, with the whole of which, he seems to be charged in the account. This fact therefore, must be ascertained in the Court of Chancery.
If it appear, that he is so charged, the credit in his account (as executor,) in October 1777, ought to be considered as a payment on that day, in paper, and *323 reduced by the scale accordingly; for a debtor, by undertaking the office of an executor, cannot be ed from exercising, in common with others, the right of paying in paper money a debt due to the testator. And as no better proof can be expected, the entry in his account, will be evidence of the time of payment, and from that time, he bound his securities to be answerable for the application of the
The decree therefore must be costs, and the cause remanded to the High Court of Chancery for the enquiry to be made, and for an account to be taken, according tothe principles of this decree.(1)

 Taliaferro v. Minor, 2 Call. 190. Miller v. Beverleys, 4 Hen. & Munf. 415. White's Ex. v. Johnson, 2 Munf, 285. Sheppard's Ex. v. Starke et. ux. 3 Munf. 29. 40. Cavendish v. Fleming. M'Call v. Peachey's Adm. 3 Munf. 198. 280.