# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## GREGORY v. PARKER.

### February 12th, 1891.

1. LUNATICS—*Committee—Compensation.*—Where committee of lunatic had custody of an undue registered U. S. bond, and collected only the interest, he is entitled to five per cent. commission on the interest, and no more.

2. IDEM—*Rents—Commissions.*—From rents from prompt-paying tenants, mostly in possession when committee took charge, five per cent. is full compensation for his services.

3. IDEM—*Deposits—Liability.*—Where in good faith, using it only for fiduciary purposes, committee deposits lunatic's money in a bank he has reason to regard as solvent, and wherein he has no funds of his own, he is not liable for loss from failure of the bank.

Appeal from decree of circuit court of city of Portsmouth, rendered September 9th, 1889, in a cause wherein the appellant, F. M. Whitehurst, executor of Eliza Gregory, deceased, is complainant, and Joseph A. Parker, her committee, and W. G. W. Parker, are defendants. Opinion states the case.

*Sharpe & Hughes* and *Whitehurst & Hughes*, for the appellant.

*Watts & Hatton*, for the appellees.

FAUNTLEROY, J.,,delivered the opinion of the court.

It appears from the record of the proceedings in the said suit, that on February 12th, 1880, Joseph A. Parker was, by

the Portsmouth hustings court, appointed committee of the said Eliza Gregory as an insane person; and that, by virtue of said appointment, he took immediate possession of valuable lots of land and improvements in the city of Portsmouth, Va., of the fee-simple value of at least $25,000, and of the annual rental value of at least $2,000; also of a $10,000 United States registered bond; a deposit of $4,532.15 in the bank of Portsmouth; a deposit of $1,182 in the banking-house of Bain & Brother of said city; of certain leasehold property in said city, of the fee-simple value of at least $2,400, and of the annual rental value of at least $300; of a bond of Milton & Dyson of $400; and of certain household property. The said Parker, committee, had exclusive control and management of all of the said property from the said date of his appointment, up to the 5th day of March, 1888; at which time he delivered up the possession of the real and leasehold estate to the said Eliza Gregory, under a decree of that date, adjudging the said Eliza Gregory to be of sane mind, and revoking his powers as her said committee; and on March 29th, 1888, by a special decree to that effect, he turned over to the said Eliza Gregory the $10,000 United States registered bond, leaving to be adjudicated by a future decree of the court the following particulars of charge in the complainants' bill, viz.:

| | | | |
|---|---|---|---|
| 1881. | Feb. | 12—Commissions at 5 per cent. on $10,000—U. S. registered bond, | $ 500 00 |
| 1882. | Feb. | 28—Commissions at 10 per cent. on $2,099.96—rents, | 209 96 |
| 1883. | Feb. | 1—Commissions at 10 per cent. on $1,888.09—rents, | 188 80 |
| 1884. | Feb. | 1—Commissions at 10 per cent. on $2,036.93—rents, | 203 69 |
| 1885. | March | 1—Commissions at 10 per cent. on $1,959.50—rents, | 195 95 |

| | | |
|---|---|---|
| 1886. March 1—Commissions at 10 per cent. on $1,496—rents, | 149 | 60 |
| 1887. March 1—Commissions at 10 per cent. on $1,801—rents, | 180 | 10 |
| 1888. March 1—Commissions at 10 per cent. on $1,858.10—rents, | 185 | 81 |
| 1885. March 1—Item of account credited to committee, | 3,207 | 81 |

The complainant, Eliza Gregory, having died, the suit was revived in the name of the executor of her will, F. M. Whitehurst, the appellant; and by agreement of counsel, waiving report and all exceptions, the foregoing particulars embraced in the charges of the bill of complaint were submitted to the court for adjudication and decree; which said decree was finally entered on September 9th, 1889; and from this decree this appeal has been allowed.

The first assignment of error, is the giving of said Joseph A. Parker, committee, commissions at five per centum on the $10,000 United States registered bond—the item of $500, when it is contended, his commissions, in this particular, should have been confined to five per cent. upon the collections of interest upon the said bond. We are of opinion that this assignment of error is well taken. The said United States registered bond was not due and payable, nor was it collectable of the Government. It was not perishable; and neither debts nor other necessities of Mrs. Gregory's large estate in the hands of her committee, required the sale or conversion of the said bond into money; and, in fact, there was no change in the security or investment whatever. The custody of the bond was attended with no risk or trouble, and in case of destruction, being a registered bond in her name, it could have been reissued, at cost of her estate, and there were safe depositories in Norfolk and Portsmouth, accustomed to store valuables, in which the bond could be (and doubtless was) stored at the

expense of Mrs. Gregory's estate. The only apparent reason
for the debiting and crediting of the face value of the bond
in the committee's account, where it is made to appear for the
purpose, was to lessen the *corpus,* and to subject it to the charge
of $500. The committee held the said United States registered
bond, upon which he could only collect the interest just as he
held his ward's leasehold property, to collect the rents thereof,
and as the executor in *Claycomb's Legatees* v. *Claycomb's Executor,*
10 Gratt., 589, held slaves, upon the appraised value of which
he was denied commissions. In that case Judge Moncure
points the distinction when he says: "It was not necessary to
sell any of the slaves for the payment of debts, legacies, or
expenses of administration. The executor was not authorized
by law, or by the will, to sell, and did not sell any of them·
*   *   There was no necessity, and no propriety in debiting
and crediting their appraised value in the executorial account."
Our statute provides that executors and administrators may be
allowed such recompense for their personal trouble as the
court on passing their accounts shall judge reasonable; but
that recompense has generally, if not always, been measured
by a commission upon actual receipts; and such commission
has generally been five per cent. upon the receipts: which was
considered adequate even in a case in which the testator by
his will directed his executors to be handsomely paid. (*Waddy's
Ex'or* v. *Hawkin's Adm'r,* 4 Leigh, 458). In some cases a larger
commission has been allowed under peculiar circumstances.
(2 Rob. P., 370; Lomax on Executors, 329). In this case there
are no peculiar circumstances to require extra compensation.
The estate was unembarrassed, its transactions few and simple,
and its administration very easy." The committee did nothing
to change the security or investment; and in the absence of
any necessity for sale or conversion of the United States reg-
istered bond, had he sold or converted it into money, he would
have been refused commissions upon the face value of the

bond. (Minor's Institute, Vol. IV., Part II., 1372–1373 and
authorities cited).

The committee stood in the relation to Mrs. Gregory which
a guardian holds to his wards, and it is clearly settled that
commissions are not to be allowed to the guardian upon the
value of property belonging to the ward, and finally turned
over to him in kind, unless where it was perishable, or other-
wise be such property as the guardian might properly sell, or
bonds which he might rightfully have collected, but did not;
and, with the ward's consent, paid over to him in kind as so
much money. And if the guardian appear to have converted
the property of the ward into money, with a view to commis-
sions, where there is no sufficient reason therefor, commissions
will be denied to him. *Bank of Va.* v. *Craig,* 6 Leigh, 437;
*Farneyhough* v. *Dickinson,* 2 Rob., 582; *Claycomb* v. *Claycomb,*
10 Gratt.; 1 Minor's Institutes, 502; 460, 2nd edition. A per-
sonal representative is clothed with power, and it is his duty,
to convert the personal assets of an estate, including choses
in action, into ready money, to pay funeral expenses, debts, &c.
(Code 1887, secs. 2651, 2652); yet in the absence of debt due
by Mr. Gregory, and of any necessities of her condition, re-
quiring sale, and the bond being not due, uncollectable, and a
safe, desirable, and permanent investment, there was no power
vested in the committee, nor was there any duty imposed upon
him by law, to sell or convert it—as he did not, in very fact,
do. It was error to allow the committee the item of $500
upon the value of the U. S. registered bond for $10,000, over
and above and additional to his commissions upon the annual
interest received by him upon the said investment.

The second assignment of error is that the said Joseph A.
Parker, committee, was allowed ten per centum commissions
on the aforesaid items of rents received by him, aggregating
the sum of $1,313.94, when five per centum upon said receipts,
or $656.97 would have been reasonable and sufficient, and
should have been the compensation allowed.

The real estate of Mrs. Gregory, the rents of which gave trouble in the collection thereof, was placed in the hands of rental agents, who charged, and who were paid, ten per centum, in addition to the five per centum thereon allowed to the committee; but the aforesaid items of rents, surcharged and falsified by the bill, were collected by the committee, in person, from tenants who were mainly those whom the committee found in occupancy upon his taking charge of the estate, and who gave no trouble or expense in the collection of their rents —which were large and not numerous. Ten per cent. may be allowed where the debts to be collected are small and numerous, and the debtors dispersed; and where the personal representative is subjected to great and unusual trouble and expense; but, in the absence of such peculiar circumstances, five per cent. on the actual receipts is, for the most part, fixed by usage. It may, sometimes, be even less, or more, as circumstances shall justify. Minor's Institutes, Vol. IV, Part II, p 1372–73; 3 Rob. Prac., 370; 2 Lomax on Executors, 543–44. *Fitzgerald* v. *Jones*, 1 Munf., 150; *Cavendish* v. *Fleming*, 3 Munf 198; *McCall* v. *Peachy*, 3 Munf. 397; *Boyd* v. *Oglesby*, 23 Gratt., 688–89. But in this case, no such circumstances exist; on the contrary, in the language of the committee himself, the collection of these rents was not attended with any more unusual difficulty or loss of time than is necessary in the general course of business to make such collections; the tenants were mainly those in possession of the property when he took charge of the estate; were prompt-paying tenants, paying when called on— necessitating, sometimes, more than one visit, however, before he could find them in. Such tenants as were not prompt, or were difficult, were placed in the hands of rental agents, to whom were paid ten per cent., in addition to the five received by the committee for the same—making fifteen per cent. paid by the estate.

The whole matter of these items challenged and surcharged

by the bill, without report and waiving all exceptions, was submitted to the court below upon depositions and exhibits, which are now before this court; and the facts disclosed in this record in no manner will justify the large allowance of commissions made by the lower court. We are of opinion that five per cent. commissions on the large yearly receipts from this large estate was a full compensation for the services rendered by the committee.

The third assignment of error is the permitting the said Joseph A. Parker, committee, to have credit for $3,207.81, as of date March 1, 1885, on account of the failure of the banking house of Bain & Brother, in Portsmouth, Virginia, and thereby subjecting the estate of Eliza Gregory to the loss by such failure. At the time of the appointment of the said committee and of his taking possession of the estate of Eliza Gregory, the sum of $4,790.23 was on deposit to her credit in the Bank of Portsmouth, Virginia. where he allowed it to remain, on interest at six per cent., until he was notified by the said bank that they would not continue to hold the said deposit at six per cent. interest after August 1, 1880; he called upon the cashier of the said Bank of Portsmouth and requested him to continue to allow six per cent. interest on this deposit, as he was chargeable by law with interest at that rate; the cashier agreed to do so, as it was a fiduciary account; but in July, 1881, he received another notice from the said bank, notifying him that only five per cent. interest would be allowed thereafter. He then saw the firm of Bain & Brother, who agreed to receive the deposit and pay six per cent. interest thereon; and thereupon the said deposit of $4,790.23 was transferred, by check dated August the 29th, 1881, to Bain & Brother, where it remained until their failure.

He made the deposit in his own name, but he had no other account in the said bank in his own name, and the members of the said banking firm and the clerks knew that it was a

fiduciary fund, and they so treated it; and he never deposited any other money except what belonged to his trust, and he never used or checked upon it for any other than trust expenses. The banking house of Bain & Brother was regarded as absolutely solvent, and at the time of the failure the firm of W. & J. Parker, of which he was a member, had to the credit of the firm more than $6,000 in the said bank of Bain & Brother. He had no money of his own in the said bank and not one cent of this trust money was ever mixed or implicated in any way with the private or firm money of W. & J. Parker.

We do not think this case comes within the rule of *Pidgeon* v. *Williams' Adm'r*, 21 Gratt., 255, and *Vaiden* v. *Stubblefield's Ex'or*, 21 Gratt., 254. The fund was kept separate, and was never checked upon except to pay expenses of the trust and by the order of the court. The committee appears to have acted in perfect good faith and with reasonable prudence. Mr. Minor, in his Institutes (4th Vol., 1243), states the law of this case: If the fiduciary deposit the money in his own name in a bank in which he has no funds of his own, he is answerable only for due diligence in the selection of the depository, and due vigilance in respect to such depository's continued solvency. See also *Parsley's Adm'r* v. *Martin*, 77 Va. (2 Hansbrough), 376; *Cooper* v. *Cooper's Ex'or*, 77 Va. (2 Hansbrough), 198.

The committee, Parker, acted in good faith in the transfer and investment of this trust fund, and with the prudence and discretion which he exercised in his own affairs; and, in so doing, he complied with all the requirements of the law, and we therefore think that he is justly and legally entitled to the item of $3,207.81, as of March 1, 1885, which was credited and allowed to him by the court below, whose decree, under review, is in this particular affirmed; but for the errors aforesaid the decree complained of is reversed and annulled, and

the case will be remanded to the circuit court of the city of Portsmouth for its further decree in conformity with the views herein expressed, and the decree of this court.

LACY, J., dissented.

DECREE REVERSED.