# Wytheville

MARY R. MAPP, EXECUTRIX V. ALGERNON T. HICKMAN, LATE
COMMITTEE OF WILLIAM B. MAPP.

June 13, 1935.

Present, All the Justices.

The opinion states the case.

*James E. Heath* and *Stewart K. Powell,* for the appellant.

*Warner Ames, B. Drummond Ayres* and *Gunter & Gunter,* for the appellee.

GREGORY, J., delivered the opinion of the court.

The appellant, Mary R. Mapp, executrix, filed her bill in the lower court against Algernon T. Hickman, the purpose of which was to surcharge and falsify his account as committee of William B. Mapp. The main contention made by the appellant was that Hickman was not entitled to certain commissions which he had allowed himself as committee. It was also contended that an attorney's fee of $500 which had been allowed was exorbitant and unjustified. The trial court, by a decree, denied the appellant the relief sought and it is of this decree that she complains.

Mr. Hickman and Mr. Mapp were residents of the town of Painter and they had been for many years, business associates and close personal friends. In 1925, Mr. Mapp suffered a stroke of paralysis and became unable to attend to his affairs, which were extensive. He requested Mr. Hickman to take charge of and operate his farms, which at this time numbered some fifteen or twenty. Mr. Hickman began looking after the farms in 1925. They were worked by tenants, some of whom paid cash rent and others a share

in the crops. Mr. Mapp's health did not improve and later he became afflicted with some mental derangement but in 1927 prior to the time that he became mentally incapacitated he turned over to Mr. Hickman $7,000 to be used in the operation of the farms and he as committee, continued to operate them until the death of Mr. Mapp, which occurred on August 11, 1930.

In August, 1928, Mr. and Mrs. Mapp came to the store of Mr. Hickman and handed the latter his (Mr. Mapp's) securities and requested him to take care of them. Mrs. Mapp was present and concurred in the request. Mr. Hickman listed the securities and gave a copy of the list to Mr. Mapp. Mr. Mapp retained supervision over them but Mr. Hickman assisted in collecting the interest and generally keeping up with them.

In September, 1929, Mr. Mapp requested Mr. Hickman to take charge of his personal affairs and checking account and further requested him to pay all of the family bills as well as the business accounts.

On October 9, 1929, Mr. Mapp was duly adjudicated an insane person and Mr. Hickman was appointed his committee though he reluctantly accepted the appointment. At this time Mr. Hickman had some $6,500 which had been derived from the operation of the farms and other sources in connection with the business and this amount after his qualification, was turned over from Hickman, agent, to Hickman, committee.

As stated, Mr. Mapp died on August 11, 1930, and three days later Mrs. Mapp qualified as executrix but Mr. Hickman at Mrs. Mapp's request continued to handle the estate for her as he had in the past. These relations continued until March 26, 1932, when Mr. Hickman turned the affairs over to Mr. Cullen who is Mrs. Mapp's son-in-law.

The estate which came into Mr. Hickman's possession as committee consisted of securities amounting to $138,186.17 and cash amounting to $36,761.72. In addition to receiving the foregoing personal property in his fiduciary capacity, he continued to operate the farms.

The court allowed the committee a commission of five per centum on the $36,761.72, which was the cash and also a commission of five per centum on the total amount of the securities.

The appellant contends that there should have been no allowance for compensation for handling the securities because they were distributed in kind. She further contends that no commissions should have been allowed on the funds which Hickman turned over to himself as committee and which had been derived from the operation of Mr. Mapp's business while Hickman was his agent. She also contends that he is not entitled to commissions charged on funds collected after his committeeship had terminated. In addition to these contentions the allowance of $500 for legal services rendered the estate is challenged.

The record clearly shows that Mr. Hickman was a faithful fiduciary; that he efficiently conducted the business affairs of Mr. Mapp; that he rendered detailed and accurate accounts of the affairs of the estate and of all of his transactions and that he properly accounted for all of the funds for which he was chargeable. The main question involved here is whether or not the allowance for commissions as committee are exorbitant. The committee was allowed as his compensation $1,838 which was five per cent of the amount of cash which came into his hands and $6,634 which was five per cent of the total amount of securities which came into his hands.

The law in Virginia regarding the compensation allowable to fiduciaries is expressed in section 5425 of the Code in this language: "The commissioner, in stating and settling the account, shall allow the fiduciary any reasonable expenses incurred by him as such; and also, except in cases in which it is otherwise provided, a reasonable compensation, in the form of a commission (on receipts), or otherwise."

This statute has been before the courts of this State in numerous cases. There is no difficulty about what the law is regarding this subject but its application to the particular

facts in a given case is often difficult. It is entirely unnecessary for us to review all of the Virginia cases on this subject for they have been recently reviewed by Judge Campbell now the chief justice of this court in the case of *Jones* v. *Virginia Trust Co.*, 142 Va. 229, 128 S. E. 533, 537, in a well-considered opinion, and also by Judge Holt in an exhaustive opinion in the case of *Trotman* v. *Trotman*, 148 Va. 860, 139 S. E. 490, 492.

It is said by Judge Campbell in *Jones* v. *Virginia Trust Company, supra:* "Inasmuch as the statute fails to lay down a hard and fast rule, we are of the opinion that the court should not do so. To us, a fair construction of the statute seems to be that if the fiduciary sells property, of whatever kind, he is generally entitled to a commission of five per cent on the receipts. If he has the right to sell, but those entitled to the proceeds of sale prefer to take the property in kind, then he is generally entitled to receive five per cent commission upon the appraised value of the property. If he is not entitled to sell the property, but must deliver in kind (except in the case of a specific legacy), he is only entitled to a reasonable compensation to be fixed by the commissioner, or court, upon the proper proof of the expense incurred, the risk taken, and the services rendered in connection with the property so delivered to those entitled thereto."

Judge Holt in *Trotman* v. *Trotman, supra,* says: "The value of the estate, the character of the work, the difficulties encountered and the results obtained, must all be remembered in reaching a judgment." See also, the case of *Koteen* v. *Bickers,* 163 Va. 676, 177 S. E. 904.

As we have previously seen, the value of the property that came into the hands of the committee was approximately $175,000. The receipts, as we have also seen, were approximately $36,000 in cash and the residue in securities. The committee gave a bond with corporate surety for $150,000 to secure the faithful performance of his fiduciary duties. He supervised the conduct of the farms, which according to the record numbered from fifteen to twenty.

This called for frequent visits to the farms, buying fertilizer, delivering it, supervising the planting and harvesting the crops, loading and shipping them. He had to keep accounts of all of these various matters, which show from the reports filed that they were kept in an accurate manner. He secured new tenants for eight of the farms which had been idle during the year 1929. He rented other farms, attended to the repairing of the houses, sold the crops and collected the proceeds; he made settlements with the tenants and attended to the insurance on the various houses. In addition to conducting the farms he attended to all of the other affairs of Mr. Mapp including the payment of all of the expenses in connection with the running of his household and paying medical bills.

In connection with the bonds he collected the interest on them as it became due and properly accounted therefor; he kept the bonds in a safe place and in date.

The trial court in its decree set out that Hickman "is entitled to a reasonable compensation for his services as such, and is of the opinion that considering the familiarity of A. T. Hickman with the estate and affairs of Wm. G. Mapp, the advantage to the estate of his familiarity and knowledge and character of the work done by said committee, the difficulties encountered, the risks taken, the value of the estate, the services rendered by him and the results obtained, five per centum of all amounts coming into his hands including the certificates delivered in kind at their appraised value, is a reasonable compensation * * *."

It is observed that the court below fixed no specific allowance to the committee for his services in conducting the farms. Allowance of $1,838 was made for the cash receipts and $6,634 for the securities. The court's allowance was based on a five per centum commission on the total of those items and it was evidently intended that compensation for services rendered in connection with the farms was included in the amount of commissions allowed on the securities. The total compensation of the committee was fixed at $8,472.40. We think this is too much. The evi-

dence is here and we are in position to fix the fair compensation. Our view is that the committee should be allowed five per centum commission upon the cash receipts which came into his hands as such committee and one and one-half per centum commissions on the securities. We also think he should be compensated for conducting the farms for eleven months at the rate of $100 per month.

■ There is no merit in the claim of the appellant that the committee should not be allowed commissions upon the amount he held as agent for Mr. Mapp and turned over to himself as committee. The rule that a fiduciary is not entitled to commissions on the amount of a debt he is due the estate and pays does not apply here. The committee did not owe the estate any personal debt. The money he turned over to himslf as committee was money he received as agent of Mr. Mapp and it was only in that representative capacity that he paid it to himself as committee.

■ The appellant claims that the committee has charged commissions on funds that were received by him after his committeeship had ended. This claim is based on the fact that two bonds were shown on the books to have been collected a few days after Mr. Mapp's death. One of them was collected before but entered after his death. This is shown from the "Defendant's Exhibit C." The other bond of the Sinclair Oil Company for $5,000 was due on September 1, 1930, and paid on September 3, 1930, which was after the committeeship had terminated and as to this $5,000 item, no commissions should be allowed upon it as a cash receipt but it should be included in the securities upon which we are allowing a commission of one and one-half per centum.

■ Appellant challenges an attorney's fee of $500 allowed for legal services rendered in connection with the estate while Mr. Hickman was committee. The attorney had represented Mr. Mapp for many years. He was, in a general way, familiar with Mr. Mapp's affairs. He made the motion for the appointment of the committee and acted as legal advisor for the benefit of the estate. We think,

under the circumstances, that the attorney's fee allowed is reasonable.

The decree is reversed and the cause is remanded to the trial court for the entry of a decree that will carry out the views herein expressed. Costs are awarded against the appellee, Algernon T. Hickman.

*Reversed and remanded.*