# Wytheville

SELINA J. GRANDY v. C. W. GRANDY.

June 9, 1941.

Record No. 2368.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Browning and Spratley, JJ.

*Henry Bowden* and *Christian, Barton & Parker,* for the appellant.

*Savage & Lawrence,* for the appellee.

Holt, J., delivered the opinion of the court.

W. B. S. Grandy of Norfolk died on May 16, 1938, leaving to survive him a widow, Selina J. Grandy, but no children. His last will and testament of date August 10. 1937, was duly admitted to probate on May 19,

1938, in the Corporation Court of the city of Norfolk. By it he appointed his brother, C. W. Grandy, executor and trustee, and requested that he be permitted to qualify without security. He did qualify and in due course proceeded to have the estate of his decedent appraised.

The items which went to make up this estate were valued at these sums: Real estate, $150,747.87; intangible personal property, $527,514.23; and tangible personal property, $30.00, a total of $678,292.10.

Afterwards, and in proper time, the appellee placed his transactions before Thomas H. Willcox, Commissioner of Accounts. The settlement of that commissioner the court confirmed. By way of commissions the executor was allowed 5% of the appraised value of all intangible personal property, plus 5% on income received during the course of administration, in all $26,377.21. This the widow contends is excessive.

There was given to her the residence near Virginia Beach and tangible personalty. Other real estate the executor was to hold as trustee and to pay to her the income therefrom for life. She was also given one-half of the intangible personalty. Of that remaining one-half went to his brother, C. W. Grandy, one-fourth to his nephew, W. Selden Grandy, and one-fourth to his niece, Julia Selden Grandy. This real estate in which the widow had a life interest went at her death in fee one-half to his brother, C. W. Grandy, and one-fourth each to the named niece and nephew.

■■ Compensation to fiduciaries is not fixed by statute and turns upon the facts in each case. It must be reasonable.

■ "The value of the estate, the character of the work, the difficulties encountered, and the results obtained must all be remembered in reaching a judgment. The report of the commissioner must stand unless it is erroneous on its face. Compensation to fiduciaries is a veritable wellspring of litigation." *Trotman* v. *Trotman,* 148 Va. 860, 139 S. E. 490.

In the recent case of *Powers* v. *Powers,* 174 Va. 164, 3 S. E. (2d) 162, we said:

"In *Young* v. *Bowen,* 131 Va. 401, 108 S. E. 866, we expressly held that the *ex parte* settlements of the commissioner of accounts are presumed to be correct until surcharged and falsified, and not only the duty of specifying errors, but also the *onus probandi* devolves on the party complaining. Cited to sustain the rule are *Peale* v. *Hickle,* 9 Gratt. (50 Va.) 437; *Corbin* v. *Mills' Ex'rs,* 19 Gratt. (60 Va.) 438.''

This presumption is strengthened by the approval of the trial court.

That statute applicable, Code, section 5425, reads:

"The commissioner, in stating and settling the account, shall allow the fiduciary any reasonable expenses incurred by him as such; and also, except in cases in which it is otherwise provided, a reasonable compensation, in the form of a commission (on receipts), or otherwise.''

"In Virginia the practice is to allow five per centum commission upon receipts, unless reason to the contrary is shown." *Harris* v. *Citizens Bank & Trust Co.,* 172 Va. 111, 200 S. E. 652. And in support of the conclusion there reached are cited *Cannon* v. *Searles,* 150 Va. 738, 143 S. E. 495, and *Allen's Ex'x.* v. *Virginia Trust Co.,* 116 Va. 319, 82 S. E. 104.

In *Jones* v. *Virginia Trust Co.,* 142 Va. 229, 128 S. E. 533, in an opinion by Campbell, J., now Chief Justice Campbell, he, in a careful review of many decisions dealing with this subject, said:

"From a very early period, beginning with the case of *Granberry* v. *Granberry,* 1 Wash. (1 Va.) 246, 1 Am. Dec. 455, to the recent case of *Williams* v. *Bond,* 120 Va. 686, 91 S. E. 627, a commission of five per cent upon receipts has been the measure of compensation allowed a fiduciary, except under peculiar circumstances, when the commission or compensation has been increased or reduced as the exigencies demanded. The cases on the

question of compensation to fiduciaries where distribution of the estate is made in kind are not altogether in harmony.''

■ His conclusion is that in the absence of special circumstances a fiduciary is entitled to a commission of 5% on intangibles. If he sells real property he is also entitled to 5% on the proceeds of sale. If he has the right to sell, he is entitled to a like commission on its fair value, even though the beneficiary elects to take in kind; otherwise to a reasonable compensation. *Trotman* v. *Trotman, supra,* and *Mapp* v. *Hickman,* 164 Va. 386, 180 S. E. 296.

In the instant case, the executor had testamentary authority to sell and to reinvest the proceeds of sale both of intangibles and of real estate, with the exception of the home and of tangible personalty valued at $30.00.

C. W. Grandy, the executor, and W. B. S. Grandy, the testator, are scions of an old and distinguished Norfolk family, members of which through generations have accumulated and amassed large fortunes begun by their great-grandfather, which passed to them from generation to generation. Decedent's estate was widely invested. An itemized statement covers many typewritten pages. For fifteen years the executor had been the agent of the testator and most of the estate represented investments made by him, and of it he was custodian. During the process of administration he has sold securities in the amount of $184,389.02 and has paid for others amounting to $5,285.06. Because of these transactions and because of the advance in value of other securities held, the corpus of the estate has been increased by $24,-122, and on this increase no commission has been charged.

This excerpt from the executor's testimony explains itself:

"By Mr. Savage:

"Q. Mr. Grandy, in additon to the five per cent on the principal of these intangibles, I notice that exception is made to an amount paid to yourself from yourself as

executor, of $459.14, stated in the report as 'salary to March 31, 1939.' Will you please state what that item covers?

"A. That covers five per cent on income collected for the estate from December 31, 1938, to March 31, 1939, in the amount of $9,182.05, five per cent of which is the amount.

"Q. In other words, do I understand that that five per cent represents five per cent on the income of the estate collected by you as executor?

"A. Correct.

"By Mr. Barton:

"Q. Prior to your brother's death?

"A. No. That is for the period from December 31, 1938, to March 31, 1939.

"By the Court:

"Q. Why do you call it 'salary'?

"A. Well, just to differentiate on the books between that and the commission charged by the executor for his acts as executor. I just wanted those two things to be clear. I did not think it made any difference what name I gave it—simply a style of accounting.

"By Mr. Savage:

"Q. The item, whatever it is called, whether 'salary' or 'commissions,' is computed and represents five per cent on the income to the estate up to March, 1939; is that correct?

"A. That is correct.

"Q. There is another item, of $187.93, June 26, on the account, page 9, 'To paid C. W. Grandy on income $628.39'; will you state what that represents?

"A. That was five per cent on the income collected from March 31, 1939, to that date.

"Q. So that you do claim, in addition to the commission on the appraised value of the principal, a five per cent commission on the income collected by you?

"A. On the income actually collected by me.

"Q. And the income is represented by those two figures I have just referred to, $459.14—

"A. No; that is five per cent of the total income collected."

The appraised value of the real estate which he holds as trustee for the benefit of the widow during her life is $120,747.87, and on this he has made no charge. The interest of the testator in many of these parcels of land was fractional and therefore troublesome, as will appear from this statement by the executor:

"Q. I note from the inventory and appraisal that there seem to be some approximately 35 to 50 different parcels of real estate. I further observe that in some instances the interest of the decedent is put at 17/128; is that correct?

"A. Correct.

"Q. In some instances at 11/64?

"A. Correct.

"Q. And in one instance, apparently, the interest of the decedent was 19.60993 per cent; is that right?

"A. That is right."

All of it has been dealt with in exact accordance with a custom known to and acquiesced in by the decedent. That is to say, whenever a member of the family was called upon to act as a personal representative of another member of that family who had died, the compensation was determined on the basis of 5% of the value of the intangible assets plus 5% on the income during the period of administration. No charge was made on the appraised value of the real estate, regardless of whether the will did or did not give to the executor or trustee the power of disposition. For example, he and his brother, Charles R. Grandy, administered on their mother's estate, appraised at $638,796. Its intangibles were appraised at $273,810, and on that item commission alone was charged. C. W. Grandy was a son of C. W. Grandy and was one of his executors. In that instance the estate was appraised at $830,291.24.

Its intangibles amounted to $722,994.57. On that alone a
5% commission was charged. This charge was known
to W. B. S. Grandy, one of the beneficiaries, and to that
he did not object. Caroline Selden, an aunt, appointed
the appellee here, C. W. Grandy, her sole executor. Her
estate was appraised at $815,260.75; intangibles and
cash were appraised at $564,410.80. The executor in that
instance charged commissions on intangibles alone.
These decedents nowhere name the compensation to be
paid to their personal representatives. That to be paid
to C. W. Grandy on the estate of W. B. S. Grandy could
have been named by him had he deemed it necessary;
but, cognizant of the custom which had long obtained
with his family, he expected that to be done which had
theretofore been done. With this custom and tradition
in mind we might rest. It has been accepted by W. Sel-
den Grandy, the nephew, and by Julia Selden Grandy,
the niece. The widow, who has a one-half interest, has
alone protested.

The executor tells us of some of the duties which fell
upon him:

He "had to handle all of the detail of making up of
the accounts, the making up of the estate tax returns
and the inheritance tax returns, the collection of notes
and items that fell due, the distribution of the assets ac-
cording to the terms of the will, the calculation as to an
equitable distribution, the physical distribution of those
notes and stocks, the transfer, with all of the require-
ments of the law with regard to each particular stock,
as to affidavits and all the various papers required for
transfer of same—I don't remember the exact number
of stocks; thirty or forty different stocks—the consul-
tation with United States Treasury Department with
regard to appraisals which were contested, the final ad-
justment, after many conferences and correspondence,
with regard to the estate tax, the correspondence and
also a trip to Richmond to consult with the Virginia
State taxing authority with regard to the inheritance

tax—it is impossible to give a picture of all that is required to handle an estate of that size, but it required a very considerable period of time. In brief, I did everything required in the handling of that estate, including the returns for federal estate and federal inheritance taxes.''

A Federal estate tax return, like that under review, is a highly technical document and necessitated many conferences with officials from the Treasury Department. The minimum estimate of the value of such services by a competent expert is put by witnesses at $5,000.00. The State inheritance tax is not so involved but is not to be made inadvisedly or lightly. Here the figures ultimately determined were: Federal tax, $102,488.64, and inheritance tax, $17,825. The apportionment of securities among legatees necessitated the utmost good judgment. No wayfaring man could have undertaken it with safety. Commissions might have been charged on real estate, which the executor was authorized to sell, and would in itself amount to $6,000. One less intimately familiar with this decedent's estate and less competent to deal with its intricacies might well, through counsel, have sought the aid and advice of a chancellor in its administration. Such a charge in such circumstances would have been proper if not necessary.

When we take into consideration the findings of the Commissioner of Accounts, himself an able lawyer, the judgment of the chancellor below, highly competent and experienced, the responsibilities entailed, and the almost immemorial family custom and tradition, we reach the conclusion that there was no error in the decree appealed from and that it must be affirmed.

*Affirmed.*