# Richmond

## Virginia Trust Company, Executor, Etc. v. Arthur Armitage Evans, Et Al.

March 10, 1952.

Record No. 3887.

Present, All the Justices.

The opinion states the case.

*J. Randolph Tucker* and *Wm. J. McDowell,* for the appellant.

*Bryan Carver* and *J. M. Perry,* for the appellees.

SPRATLEY, J., delivered the opinion of the court.

Arthur Thomas Kelly Evans, a resident of Bath county, Virginia, departed this life testate on May 21, 1948. His will was probated on June 10, 1948. On the same day the Virginia Trust Company named as executor in the will duly qualified as such and proceeded to administer the estate.

By his will testator made twelve specific bequests of his property, and disposed of the remainder by devising and bequeathing two-thirds to his nephew, Arthur Armitage Evans, and one-third to his nephew, George Evans. The will did not direct that any of the property be sold or not sold.

The final account of the executor showed receipt of personal property having a gross appraised value of $73,331.75. Included in the gross sum were 40 shares of Gastonia Coca-Cola Bottling Company stock, appraised at $50,000; 250 shares of Thompson-Lundmark Gold Mines, Ltd.; and 5,333-1/3 shares of Upper Canadian Mines, Ltd., both Canadian companies appraised at $8,952.92. Not included in the account were the twelve specific legacies delivered in kind to the named legatees, and about 300,000 shares of stock of twelve Canadian mining companies having little or no value.

Among the assets which came into the executor's hands were a bank balance of about $9,000 in the First National Bank of Atlanta, Georgia, a small balance in a bank in London, England, and some stocks, bonds and other property in Canada. The principal assets located in Canada were a $5,000 Dominion of Canada 3% bond, and a balance of $789.12 with the Bank of Nova Scotia. The Coca-Cola Bottling Company stock and the Canadian mining stocks were located in a safety deposit box in the Virginia Trust Company in Richmond, Virginia. The bank

balance in Canada, less cost of transfer to the United States, in the net sum of $732.48, was withdrawn by the executor, and the Dominion of Canada bond was sold for the net sum of $4,443.75.

According to the record, the testator's investment in the 40 shares of Coca-Cola stock was $3,000. There was no established market value for these shares, the Gastonia Coca-Cola Bottling Company being a closed corporation, with only 600 shares outstanding, of which the testator owned only one-fifteenth. During the five-year period prior to the testator's death, he had received average yearly dividends of $74 per share on this stock, that is, $2,960 annually. During the period of administration of the estate from January 1, 1949, to January 5, 1950, the executor received dividends thereon amounting to $8,400.

The executor requested the Gastonia Coca-Cola Bottling Company to furnish it with information showing the value of its stock for the purpose of inventory and appraisement. A representative of the Coca-Cola Company came to Richmond, and furnished the executor with the desired information. Thereupon, in consideration of the established factors, a method of appraisement was adopted which produced the value of $1,250 per share. This appraisal was discussed with agents of the Federal Bureau of Internal Revenue, and an agreement was reached to adopt that value as a fair market value of the stocks for tax purposes. This was confirmed by the United States Treasury Department, and thereafter accepted by the tax authorities of the State of Virginia.

The representative of the Coca-Cola Company advised the executor not to sell the stock of his company. The residuary legatees were informed of all of the facts and the foregoing suggestion. Promptly thereafterwards, in June, 1948, the residuary legatees requested distribution and delivery of the Coca-Cola, Thompson-Lundmark Mines, Ltd., and Upper Canadian Mines, Ltd., stock to them in kind. Distribution and delivery were accordingly made.

In the settlement of its final account before the commissioner of accounts of Bath county, the executor charged 5% commission on $73,331.75, the gross appraised value of the estate, which amount included $58,952.92, the appraised value of the stocks delivered in kind to the residuary legatees. It also charged $40.83 for interest on money advanced to the estate to pay the specific legacies before the expiration of one year after the death

of the testator. The commissioner refused to allow 5% commission charged on the value of the stock delivered in kind; but approved an allowance of 2½%, or the sum of $1,473.82 instead of $2,947.64. He further refused to allow the interest charge on money advanced by the executor. The total commissions charged by the executor were $3,666.59 and the amount allowed by the commissioner was $2,192.77.

A 5% commission was originally charged on a portion of the specific legacies delivered in kind; but upon refusal of the commissioner to approve such allowance the claim for the charge was withdrawn, and is not in issue here.

The executor excepted to the actions of the commissioner, and thereafter the matter came on to be heard in the Circuit Court of Bath county. On December 19, 1950, the circuit court overruled the exceptions, and being of opinion, for reasons stated in a written opinion, made a part of the record, approved and confirmed the report of the commissioner in all respects. The executor was ordered to pay to the estate the sum of $1,473.82, also the sum of $40.83, charged as interest on sums advanced by the executor to the estate, and to pay personally the cost of this proceeding.

The Virginia Trust Company specializes in the administration of trusts and estates. It is staffed by a capable personnel of trained experts and professional employees. It satisfactorily obtained by correspondence the transfer of the foreign assets to Virginia, in compliance with government regulations, without loss. It prepared and filed the necessary State and Federal returns for income, inheritance and estate tax purposes. It paid all funeral expenses, debts, all specific legacies, and delivered in kind the 40 shares of Coca-Cola stock and the Canadian mining stocks to the residuary legatees.

The main question for our determination is the right of the executor to receive 5% commission upon the appraised value of the stock in kind delivered to the residuary legatees. The disallowance of the small charge for interest and the question of costs are secondary.

The law in Virginia regarding a fiduciary's right to compensation is stated in section 26-30, Code, 1950, (§ 5425, Code 1919) as follows:

"The commissioner, in stating and settling the account, shall allow the fiduciary any reasonable expenses incurred by him as

such; and also, except in cases in which it is otherwise provided, a reasonable compensation, in the form of a commission on receipts, or otherwise.''

This statute has been before this court in numerous cases. 8 M. J., Executors and Administrators, § 229, *et seq.* It is unnecessary to review all of them. It is sufficient to refer only to those which deal with the distribution in kind of a part or the whole of the estate.

In *Claycomb* v. *Claycomb* (1854), 10 Gratt. (51 Va.) 589, the question involved was the right of the executor to a commission of 5% on the appraised value of slaves delivered in kind among the legatees as directed by the will. It was held that the executor was not entitled to such commission, the court saying: ''It was not necessary to sell any of the slaves for the payment of debts, legacies or expense of administration.'' The executor was not entitled by law or by will to sell, and did not sell any of them.

In *Gregory* v. *Parker* (1891), 87 Va. 451, 12 S. E. 801, the committee of an insane person delivered in kind a registered United States bond, and charged the estate with 5% commission on the value of the bond. In refusing to allow the commission the court had this to say at page 453: ''The said United States registered bond was not due and payable, nor was it collectable of the Government. It was not perishable; and neither debts nor other necessities of Mrs. Gregory's large estate in the hands of her committee required, the sale or conversion of the said bond into money; and, in fact, there was no change in the security or investment whatever. The custody of the bond was attended with no risk or trouble, * * *.''

In *Bliss* v. *Spencer*, 125 Va. 36, 61, 99 S. E. 593, 5 A. L. R. 619, the court approved the rule involved in *Gregory* v. *Parker, supra,* as well established, and sound and just in cases to which it is applicable. It there said that in reading the cases which held that a fiduciary was entitled to commissions on the appraised value of property delivered in kind to the legatees it is disclosed that in each case there was ''some peculiar circumstance'' upon which the decisions turned.

In *Williams* v. *Bond,* 120 Va. 678, 91 S. E. 627, we said:

''Where no compensation at all is named in the will, the rule is that the allowance shall be reasonable, being usually 5% on receipts, subject to increase or reduction of this rate under

peculiar circumstances. These propositions are not controverted and are well settled.''

In *Jones* v. *Virginia Trust Co.*, 142 Va. 229, 128 S. E. 533, this is said:

''From a very early period, beginning with the case of *Granberry* v. *Granberry*, 1 Wash. (1 Va.) 246, 1 Am. Dec. 455, to the recent case of *Williams* v. *Bond*, 120 Va. 678, 686, 91 S. E. 627, a commission of five per cent upon receipts has been the measure of compensation allowed a fiduciary, except under peculiar circumstances, when the commission or compensation has been increased or reduced as the exigencies demanded. The cases on the question of compensation to fiduciaries where distribution of the estate is made in kind are not altogether in harmony. (142 Va. p. 234)

\* \* \* \* \* \*

''In a note to section 5425 it is said: 'Commissions are not to be allowed to the fiduciary upon the value of property belonging to the estate, and finally turned over to him in kind, unless when it was perishable, or was such property as the fiduciary might properly have sold, or bonds which he might have collected but did not, and with consent of *cestui que trust* paid over to him in kind as so much money.' (Citing cases). (142 Va. p. 236)

\* \* \* \* \* \*

''In reviewing the cases which hold that a fiduciary is not entitled to any compensation whatever where the property bequeathed (though not specific) is delivered in kind, we think the rule laid down is too restricted to meet the requirements of modern business. On the other hand, in view of the fact that the bulk of many large estates is composed of stocks and bonds, which are preferable to money, we are of opinion that the rule laid down in *Allen v. Virginia Trust Co., supra*,\* is too liberal.'' (142 Va. p. 240)

The cases in Virginia prior to 1927 have been collected and discussed in the case next above cited and *Trotman* v. *Trotman*, 148 Va. 860, 139 S. E. 490.

*Jones* v. *Virginia Trust Co., supra*, page 241, lays down the general principles which should govern in the consideration of the issue before us.

''Inasmuch as the statute fails to lay down a hard and fast rule, we are of the opinion that the court should not do so.

---

\* 116 Va. 319, 82 S. E. 104.

To us, a fair construction of the statute seems to be that if the fiduciary sells property, of whatever kind, he is generally entitled to a commission of five per cent on the receipts. If he has the right to sell, but those entitled to the proceeds of sale prefer to take the property in kind, then he is generally entitled to receive five per cent commission upon the appraised value of the property. If he is not entitled to sell the property, but must deliver in kind (except in the case of a specific legacy), he is only entitled to a reasonable compensation to be fixed by the commissioner, or court, upon the proper proof of the expense incurred, the risk taken, and the services rendered in connection with the property so delivered to those entitled thereto.''

In *Trotman* v. *Trotman, supra,* at page 868, Justice Holt, later Chief Justice, said that the word ''reasonable'' as used in the statute ''is but another way of saying that they (commissions) are to be measured by the conscience of the court.'' Proceeding, he pointed out: ''The value of the estate, the character of the work, the difficulties encountered, and the results obtained must all be remembered in reaching a judgment.''

The decisions subsequent to 1927 are not in complete harmony. A careful reading of them discloses that each turned upon some peculiar circumstances.

In *Mapp* v. *Hickman,* 164 Va. 386, 180 S. E. 296, the court, considering the value of the estate and the character of the work required of the fiduciary, thought a five per centum commission on securities distributed in kind too high; but allowed full commission on receipts and one and one-half per centum on the securities delivered in kind.

In *Grandy* v. *Grandy,* 177 Va. 601, 15 S. E. (2d) 66 and *Swank* v. *Reherd,* 181 Va. 943, 27 S. E. (2d) 191, the principles stated in *Jones* v. *Virginia Trust Co., supra,* are cited and approved. In each case the executor was given express authority by the will of their testator, and in each of them appeared special circumstances in connection therewith.

In the *Grandy Case, supra,* a 5% commission was allowed because of the difficult and unusual duties required of the personal representative and the manifest intention of the testator.

In the *Swank Case, supra,* a 5% commission was allowed ''on the appraised value of the real estate,'' whether converted or not, the beneficiaries choosing to take it in kind rather than in cash. The opinion sets out considerable litigation with reference

to the estate and satisfactory results obtained by the executors, without going into detail as to the labors involved.

Appellant contends that the "power to sell" and the "right to sell" have the same meaning, and argues since it had the power to sell it was entitled to a 5% commission on the appraised value of all the property which came into its possession, regardless of its distribution in kind. This, we think, is too liberal a view. It was disapproved in *Jones* v. *Virginia Trust Co., supra,* at page 241.

The phrases "power to sell" and "right to sell," as used in the decisions do not have exactly the same meaning. The personal representative is for most purposes regarded as the owner of the legal title to the personal property of his decedent, and may dispose of it as if it were his own, except that he cannot bequeath it, nor can it be taken on execution for his debt. When sold and disposed of, the assets cannot be followed into the alienee's hands by creditors of the estate or by legatees either general or specific, except on the ground of fraud. 21 Am. Jur., Executors and Administrators, § 561, page 695; 33 C. J. S., Executors and Administrators, § 305, page 1351.

Generally speaking, the power of the fiduciary to sell means the authority given by statute, or by the instrument creating the trust, or the capacity inherent in the functioning of the office of the fiduciary. On the other hand, the right to sell is used in the sense of doing that which is proper or correct, in adherence to duty and necessity. However that may be, compensation for the fiduciary is to be measured not solely by the power or right of the fiduciary to sell or not to sell; but as we have said by taking into consideration, "The value of the estate, the character of the work, the difficulties encountered, and the results obtained."

The statutory authority of the personal representative to sell assets of the estate is confined to §§ 64-143, 64-144 and 64-145, Code, 1950.

Section 64-144 is broad enough to authorize the sale of stocks, bonds and other property, "as are likely to be impaired in value by keeping." Any further right to sell arises from the duty of the personal representative to protect and conserve the assets of the estate, or to make correct distribution to the legatees or distributees. If there be no requirement or necessity to sell, and the legatees or distributees request distribution in kind, such distribution should be made. We can see little difference in the

responsibilities of the executor of a solvent estate where the testator bequeaths a portion of his property in kind, and where the legatees are in accord and promptly request that the property to which they are entitled be distributed to them in kind. After all, a personal representative, after the satisfaction of funeral expenses, debts, costs of administration, and payment of specific legacies, if any, holds the remainder of the personal property in trust for the purpose of administration and distribution to the persons entitled thereto.

The personal representative of a decedent holds a position of trust and confidence. He is "deemed a trustee, exercising a continuing trust as to legatees and distributees of his decedent's estate." *Jones* v. *Jones*, 92 Va. 590, 598, 24 S. E. 255. He must exercise the highest fidelity and utmost good faith in dealing with the estate. In the discharge of his fiduciary obligations, he is required to use the same measure of care which a careful and prudent person would ordinarily use under like circumstances in his own personal affairs. *Harris* v. *Citizens Bank, etc., Co.*, 172 Va. 111, 200 S. E. 652; 21 Am. Jur., Executors and Administrators, § 4, page 370; 33 C. J. S., Executors and Administrators, § 184, page 1160.

Our conclusion is that the amount of compensation to which a personal representative may be entitled is dependent upon the facts of the particular case. Since it is still practically impossible to lay down a hard and fast rule because of the many factors involved, we must rely on general principles, remembering that the personal representative is entitled *to a reasonable reward, commensurate with the value of his services under the attendant circumstances, the results obtained, and the responsibility assumed.* In some instances 5% upon the appraised value of property coming into his hands would not be sufficient; in others it would be too much. Compensation has been refused for delinquency of duty. Section 26-19, Code of 1950; *Dearing* v. *Walter*, 179 Va. 620, 20 S. E. (2d) 483.

The allowance or refusal of compensation rests in the sound discretion of the court under the circumstances of each case. In view of the changing economic conditions of the modern world, and new legislation affecting the administration of estates of decedents, particularly with regard to taxation, we think, that in measuring the compensation of a personal representative there should also be considered the amount and character of

expert service required and rendered to meet current problems imposed by provisions of testator's will, or by the law, or arising out of current conditions, and the responsibilities assumed.

Nothing we have said should be understood as denying the personal representative the right to sell when authorized by statute, directed by will, or required for the security and benefit of the estate, or when necessary to effect a correct degree of distribution in kind. However, when there is no reason to sell, and the legatees or distributees request distribution in kind such distribution should be made. In the latter event, the personal representative, "except in cases in which it is otherwise provided," is entitled to reasonable compensation in the form of a commission, or otherwise, for service rendered under the peculiar circumstances of the case.

In the case before us, there are no peculiar circumstances to require extra compensation. The transfer of the foreign assets to Virginia was accomplished without difficulty. The tax appraisals were arrived at without controversy. Negotiations between the governmental authorities, the executor, the legatees and the distributees of the estate were amicable. It was not necessary to sell the securities involved. The executor did nothing to change them or their investment. Their custody was not attended with risk or trouble, and in case of their loss or destruction they could have been reissued. The estate was unembarrassed, its transactions few and simple, and its administration easy. We, therefore, agree with the commissioner and the trial judge that, under the circumstances of this case, a total compensation of $2,192.77, including a 2½% commission on the stocks delivered in kind to the residuary legatees, was reasonable and amply sufficient to cover the services and responsibilities of the executor.

We come next to one of the secondary questions.

We are told that the funeral expenses and all foreseeable obligations had been paid by June 25, 1948, at which time the executor had in hand $6,522.78. It used this cash, together with $727.22 which it advanced, to pay the specific pecuniary legacies, totaling $7,250, before the expiration of one year after testator's death. One of the residuary legatees requested or assented to such payment. Except for an unexpected physician's bill of $525, funds for which were advanced on June 28, 1948, there was no other advance of any consequence to pay debts. Advances

thereafter were for foreign death duties, necessary before the foreign assets could be reduced to possession, for United States income and State of Virginia inheritance taxes, and to the residuary legatees themselves.

The advances were made from day to day to keep the account in balance, taking into consideration receipts from all sources, including dividend income. The total interest on all the advances, which were not fully repaid, until October 6, 1949, was the sum of $45.55, charged at the rate of 4%. Of this charge the commissioner denied all but $4.72, the interest on the sum advanced to pay the Virginia inheritance taxes, even denying interest on $1,500 advanced to the residuary legatees. Interest would have accrued on the specific pecuniary legacies had they not been paid within one year after May 1, 1948, the date of testator's death. Section 64-68, Code of 1950. On May 21, 1949, funds were insufficient for the full payment of these legacies, even if all funds received had been retained. Some funds were necessary to be obtained through sale of assets of the estate, or from a loan, if liability for interest on the legacies and unpaid matured debts was to be avoided. The executor deferred to the wishes of the residuary legatees, withheld from sale the securities they wished to receive in kind, and delayed a sale of the Dominion of Canada 3% bond. By withholding sale of that bond until October 6, 1949, it obtained $137.50 interest which the estate would not have received had the bonds been sold one month after the qualification of the executor. By the latter action, the legatees benefited to the extent of $96.67, the difference between $137.50 and $40.83 interest charged on funds advanced by the executor. They ought not to be heard now to complain, nor should the executor be the loser by reason of its actions taken in the legatees' interest.

We do not approve of the practice of a fiduciary borrowing from himself personally at the expense of the estate, unless the manifest exigencies of the situation require him to do so in order to protect and conserve the estate. Such practice might conceivably lead to many opportunities for misconduct. However, under the facts and circumstances of the present case, we are not disposed to criticize the executor, or deny it the small amount of interest claimed.

For the reasons given, we are of opinion that so much of the decree complained of as ordered the executor to pay to the

estate $1,472.83, excess of commissions over $2\frac{1}{2}\%$ on the appraised value of the securities delivered in kind to the residuary legatees should be approved, and so much of the said decree as refuses to allow the executor $40.83, interest upon funds advanced for the purposes stated, should be reversed. Final judgment will be entered here accordingly, with costs to the appellees, as the parties substantially prevailing.

*Affirmed in part; reversed in part; and final judgment.*