## Richmond.

WILLIAMS, EXECUTOR, &C. V. BOND AND OTHERS.

March 15, 1917.

1. EXECUTORS AND ADMINISTRATORS—*Execution of Trust—Advice of Court.*—Where property is held under a trust by his testator at the time of his death, which vested in him no discretion as to the time or manner of its disposition, an executor is charged with the duty of "executing the trust or so much thereof as remained unexecuted," under the provisions of section 3419 of the Code, and where a difference of opinion arises between him and the beneficiaries of the trust as to what were the rights of his testator in the matter of compensation, he may seek the aid and advice of a court of equity as to the respective rights of the parties. The subject of the suit was in the nature of a final accounting and settlement upon a trust fund, involving disputed claims, and the executor followed a recognized and approved practice in seeking the aid and advice of a court of equity.

2. EXECUTORS AND ADMINISTRATORS—*Trusts—Compensation of Executor or Trustee.*—When a testator fixes the compensation for an executor or trustee under his will, and the executor or trustee named therein accepts the appointment, he is entitled to as much and is limited to as little as the testator has fixed. In cases where the language of the testator is susceptible of more than one construction, the question becomes one of interpretation which the courts must settle by ascertaining the probable intention and understanding of the parties. Where no compensation at all is named in the will, the rule is that the allowance shall be reasonable, being usually 5 per cent. on receipts, subject to increase or reduction of this rate under peculiar circumstances.

3. EXECUTORS AND ADMINISTRATORS—*Trusts—Compensation of Trustee or Executor.*—Testator gave his executor certain bank stock in trust, and also gave him the sum of $500 as compensation for his services. The executor was the testator's intimate personal friend and legal adviser who drew the will. Notwithstanding this specific bequest of $500 as compensation for his services, the executor collected 5 per cent. commission on

the first $300 and 2 per cent. commission on the remainder of
the book valuation of the bank stock.  He also collected 5 per
cent. on most but not all of the dividends paid to him under
the trust.

*Held:* That this interpretation of the will by the executor was
entitled to no small consideration; and, that what would ap-
pear to be the correct interpretation of the will had been put
into practical effect by the man whom the testator trusted
with its preparation and execution.  No further allowance
based upon the increased value of the stock at the end of the
trust should be allowed.

4. APPEAL AND ERROR—*Costs.*—It is unusual for the court of appeals
to modify a decree in respect to costs, and allowances in the
nature of costs, while affirming it in all other particulars, un-
less in case of palpable error.

5. EXECUTORS AND ADMINISTRATORS—*Costs.*—Where upon the death
of an executor and trustee his executor being charged under
Code 1904, section 3419 with executing the trust, in good faith,
brings suit to determine the rights of the beneficiaries and his
own testator, he is entitled to his costs in the lower court and
a reasonable allowance as an attorney's fee.  Such a case pre-
sents an exception to the practice noted in the preceding sylla-
bus.  But as in the case at bar the executor was not the party
substantially prevailing upon appeal, he was not entitled to
costs in the appellate court.

Appeal from a decree of the Circuit Court of Orange
county.  Decree for defendants.  Complainant appeals.

*Amended and affirmed.*

STATEMENT BY JUDGE KELLY.

Thomas W. Bond, a prosperous citizen of Orange county,
died on January 1, 1904, leaving a will whereby he provided
for the division of his large and varied estate among his
several children and grandchildren.  The following provis-
ions in his will are pertinent to this controversy:

"Third.  I give and devise to said John G. Williams, in
trust, my one hundred shares of stock in the State Bank of
Orange, Orange, Virginia, to be held by him for ten years

from the date of my death and the dividends on said bank stock for ten years are to be paid one-fifth to each of my five children; * * * At the end of said ten years from my death I give and devise said hundred shares of stock to be equally divided among my five children, if living, and the descendants of any of them that may be dead. * * * Each one of my said children is to have the right during the said ten years to represent twenty shares of said bank stock, and to vote such shares at all the meetings of the stockholders of the said bank."

"Lastly, I nominate and appoint John G. Williams, of Orange county, Virginia, executor of this my last will and testament, and request the court in which it may be probated to permit him to qualify without being required to give security. I give my said executor the sum of $500.00 as compensation for his services."

(Codicil No. 1.) "I, Thos. W. Bond, do make this codicil to my last will and testament bearing date March 11, 1900; I hereby request my children to whom I have given my stock in the State Bank of Orange, Orange, Virginia, to so vote said stock that John G. Williams shall hold the place in said bank now held by me, and I request that said John G. Williams to accept and hold said position during the ten years said stock is to be held by him in trust."

(Codicil No. 2, clause 3.) "The State Bank of Orange having been converted into the National Bank of Orange, Virginia, I hereby give and bequeath my one hundred and twenty-six shares of stock in the said National Bank to John G. Williams, in trust, to be held and disposed of by him, to the same parties, and in the same proportions, as the one hundred shares of stock were disposed of, under the third clause of my said last will and testament, * * * * I hereby make the same request of my children in reference to said stock as was made, in the first codicil to my said

will, in reference to the one hundred shares of stock in the State Bank of Orange."

The will and the codicils were all wholly in the handwriting of John G. Williams, who had been, for years prior to the death of Thos. W. Bond, his legal adviser and intimate personal friend, and who, on January 4, 1904, four days after the death of Thos. W. Bond, qualified thereunder as his executor.

Within a few months after his qualification as executor, John G. Williams filed his bill in equity in the Circuit Court of Orange county, asking the advice and direction of the court upon certain questions which affected the distribution of the estate, and which he was unwilling to decide upon his own responsibility. To this bill all the parties interested were made parties, and the prayer of the bill, *inter alia*, was, "that the court construe the will and instruct complainant in the due execution of the will * * * and for all other relief, both general and special, as is consistent with equity and the nature of the case requires." The cause, under the style of *Williams, Executor,* v. *Bond,* was regularly matured, and in November, 1904, a decree was entered therein which, among other things, directed that the executor should settle his accounts before a commissioner of the court. These accounts were fully inquired into and reported upon accordingly, and, in November, 1907, a decree was entered which confirmed a final report of the commissioner, recited a full and complete settlement of the estate by the executor, and ordered that the cause be stricken from the docket.

From the executor's accounts, approved and settled as set out above, it appeared that the executor had turned over to himself as trustee the bank stock mentioned in the will and codicils, treating it as cash at a valuation of $22,680, and had paid himself as commission thereon the sum of $462.60, being 5% on the first $300 thereof and 2% on the

86

residue; and it further appears from the record in the instant case that the executor also paid himself a commission of 5% upon most, but not upon all, of the dividends actually paid out by the bank semi-annually to the beneficial owners of this stock held in trust by him.

John G. Williams was already a stockholder and was elected a director and president of the bank within a few weeks after the testator's death, holding these positions until his own death occurred in September, 1911. His salary during this period was $100 per year. His influence and counsel were valuable assets to the bank, but his office was an inactive one, and his duties do not appear to have been much more onerous or exacting than those of the other directors who served without salary. The stock of the bank was worth, according to its book value, $181.62 per share when Mr. Williams was made president, and $333.79 per share in January, 1914, at the expiration of the period fixed in the will for the stock to be held in trust. The record does not disclose exactly what its value was when Mr. Williams died.

Lewis C. Williams qualified as the executor of John G. Williams in October, 1911. In the early part of 1915 he brought the instant suit. The bill reviews the transactions of John G. Williams as executor of Thos. W. Bond's estate, shows that the bank stock is in the possession of the complainant, that he has been holding it as trustee since the death of John G. Williams, that the ten year period has expired, that the stock should now be distributed among the parties entitled thereto, asks for instructions from the court in regard to it, and then proceeds to make the following allegations, which embody the gist of the present controversy, to-wit:

"That the said bank stock was not intended and should not have constituted a part of the estate administered by the executor, John G. Williams, but by the terms and effect

of the will of the said Bond, was intended as a separate trust estate, to be managed independent of the executorship, an account of which was not necessary for the settlement of the executorial accounts.

"That the said John G. Williams, by mistake in settling his accounts as executor on March 6, 1905, before William C. Williams, commissioner in chancery of the Circuit Court of Orange county, in the cause of *Bond, &c.* v. *Bond, &c.,* credited the estate of Thomas W. Bond with the then value of the bank stock, to-wit: $22,680.00, and charged the estate of said Bond in the same account, with a like amount, and with the sum of $462.60, 'John G. Williams, trustee's commission on $22,680.00.'

"That notwithstanding such erroneous and mistaken view of his rights by John G. Williams, executor, your complainant is advised and believes that he is entitled to 5% commission on the value of the said 126 shares of bank stock as of the day of the expiration of the trust, to-wit: on the sum of $42,057.60, as of the 31st day of December, 1913, being ten years from the date of the death of the said Thomas W. Bond and the time set for the expiration of the trust.

"That the said sum to which complainant is entitled should be credited by the sum of $462.60, heretofore paid to John G. Williams, executor, as per the account of William C. Williams, commissioner in chancery, above referred to."

The bill named as defendants the parties entitled to the stock and set out the shares therein which each was to receive. These defendants demurred to the bill, and also answered, contesting the position asserted by the complainant, averring that the executor, John G. Williams, was not entitled to any compensation at all except the $500 mentioned in the will, and that he had improperly paid himself commissions on the bank stock and on the dividends thereon. They claimed, therefore, that they were either entitled to a

judgment over against the estate of John G. Williams for the aforesaid commissions and accrued interest, or to have the court hold that the suit of *Williams' Ex'or* v. *Bond* was a final and complete settlement, conclusive against all parties thereto.

The cause was regularly matured upon the pleadings already noted and upon the evidence produced by complainant and defendants, and upon a hearing the circuit court, without expressly passing on the demurrer, decreed, "that Jno. G. Williams, Exor. of Thos. W. Bond, had the right to charge the commissions upon the bank stock in the bill and proceedings mentioned, as trustee, as per his settlement in the said suit of *Thos. Bond's Exor.* v. *Bond, &c.*, to-wit, the sum of $462.60, that being 5% on the first $300.00 and 2% on the balance, $22,380.00, of the then value of the bank stock on March 7, 1905, and that the said executor was also entitled to a five *per cent.* commission on the dividends collected on the said bank stock for the period of ten years and no longer, the limitation of his trusteeship under the will of Thos. W. Bond, deceased, or so much thereof as he actually collected and that the residue of the said five *per cent.* commission on such dividends, if any, should be paid to his executor; and doth further decide and decree that the said executor is not entitled to any commission on the enhanced value of the said bank stock or any commission on the dividends accruing thereon after the expiration of the ten years aforesaid, or any additional commission on the *corpus* thereof.

"The court doth further decree, and order, that the defendants are entitled to receive from Lewis C. Williams, executor of John G. Williams, as aforesaid, the certificates of bank stock in the bill and proceedings mentioned: and the court doth order, adjudge and decree that the said Lewis C. Williams, executor as aforesaid, deliver to the said defendants or to Gordon & Gordon and Alex. T. Browning,

their attorneys, the said certificates of the said shares of stock, to be divided and distributed among the said defendants in accordance with the will of the said Thos. W. Bond, deceased; but the said stock shall not be delivered until the said defendants or their attorneys, pay to the said executor any commissions to which he is entitled under the terms of this decree, if any such there be, the court being of opinion that it is unnecessary to settle any further accounts of the trusteeship of John. C. Williams, deceased, or of the executor of the said trustee, it appearing that the said bank stock is the only unsettled matter of the said Thos. W. Bond's estate.

"And it is further ordered and decreed that the said defendants recover against the plaintiff their costs in this behalf expended."

From this decree Lewis C. Williams, executor, obtained this appeal.

*Williams & Mullen* and *Shackelford & Shackelford,* for the appellant.

*A. T. Browning* and *Gordon & Gordon,* for the appellees.

KELLY, J., after making the foregoing statement, delivered the opinion of the court.

The first question confronting us arises upon the contention of the appellees that the appellant's bill should have been dismissed on demurrer, and that, therefore, he has no standing whatever in this court. Treating the demurrer as having been overruled by implication, we are of opinion that the bill contained matter sufficient to warrant the court in entertaining the cause. The stock was in the possession of John G. Williams at the time of his death, and was held by him upon a trust which vested in him no discretion as to

the time or manner of its disposition. This being true, Lewis C. Williams, under the provisions of section 3419 of the Code, was charged with the duty of "executing the trust or so much thereof as remained unexecuted." There was a wide difference of opinion between him and the owners of the stock as to what were the rights of his own testator in the matter of compensation; and the facts as developed led the circuit court, properly as we think, to sustain in a limited measure the view for which he contended. The subject of the suit was in the nature of a final accounting and settlement upon a trust fund, involving disputed claims, and the complainant followed a recognized and approved practice in seeking the aid and advice of a court of equity.

The next principal question is whether John G. Williams was entitled, as trustee, to any compensation in addition to the $500 provided for in the will as compensation for his services as executor, and, if so, how much. The circuit court held that he was entitled to such additional compensation, and limited the amount to the commission previously collected on that account by Mr. Williams, or his estate, plus 5% on the dividends which accrued and were paid on the stock during the trust period of ten years and from which no trustee's commissions were deducted. This, in our view of the case, was correct.

When a testator fixes the compensation for an executor or trustee under his will, and the executor or trustee named therein accepts the appointment, he is entitled to as much and is limited to as little, as the testator has fixed. In cases where the language of the testator is susceptible of more than one construction, the question becomes one of interpretation which the courts must settle by ascertaining the probable intention and understanding of the parties. Where no compensation at all is named in the will, the rule is that the allowance shall be reasonable, being usually 5%

on receipts, subject to increase or reduction of this rate under peculiar circumstances. These propositions are not controverted and are well settled. (Code, sec. 2695; *Darling* v. *Cumming*, 111 Va. 637, 69 S. E. 940; *Allen* v. *Virginia Trust Co.*, 116 Va. 319, 82 S. E. 104, 11 Am. & Eng. Ency. L., p. 1304-5.) Applying them to the instant case, there is room for the contention that the testator intended the sum of $500 to cover all the services of Mr. Williams imposed upon him by the will, but we cannot say that this contention is clearly correct, even upon the face of the will and uninfluenced by the interpretation which Mr. Williams placed upon it. This interpretation by him is entitled to no small consideration. He is shown to have been a lawyer of experience and ability, and a man of high character. He was the trusted friend and adviser of the testator, and prepared the will himself. It does not seem improper in these circumstances, and in the absence of any indication to the contrary, to assume that Mr. Williams correctly construed the will when he charged, as trustee, compensation in addition to what was allowed him as executor, and that in doing so he fixed a reasonable sum. It seems to us just and right, upon the face of the record before us, to attribute to him a correct understanding of the purpose of the testator and a faithful compliance therewith. It was clearly his idea that he was entitled to a commission upon the *corpus* of the fund represented by the bank stock, but not as much as five *per cent.* He therefore collected the much smaller sum of $462.60. It was also clearly his idea that upon the smaller amounts of the semi-annual dividends he should receive a commission of five *per cent.* straight, and this he collected upon most of them. All this seems fair and reasonable, and not at all out of accord with the probable intention of the testator as indicated by the terms of his will. In other words, what would appear to be the correct interpretation of the will has been put into practical effect by the

man whom the testator trusted with its preparation and execution.

We cannot agree, therefore, either with the contention of the appellant that Mr. Williams proceeded upon an "erroneous and mistaken view of his rights," and charged too little, or, on the other hand, with the appellees' contention that he was entitled to no compensation at all as trustee; but we are of opinion, as the circuit court evidently was, that the intention of the testator will probably be carried out and that substantial justice will be done by adopting the view upon which Mr. Williams undoubtedly acted.

We have not overlooked the claim of the appellant that there should be a further allowance based upon the increased value of the stock as of the end of the ten year period covered by the trust, but we do not think there is any substantial foundation upon which to rest such a claim. It is true, as urged by appellant, that Mr. Williams acted as counsel and as president of the bank at a small salary, but he was acting along with the other officers of the bank for the benefit of other stockholders, including himself, besides the Bond estate and there is every reason to suppose that he was, as far as he desired, master of the situation and received a salary satisfactory to himself. His services as president and attorney were chargeable to the bank as a whole, and not to a part of the stock, and he doubtless fully realized and acted upon this principle.

There is one respect, however, in which we think the decree of the lower court should be amended. The trusteeship having regularly devolved upon the complainant, and this suit having been brought in good faith and upon reasonable occasion, the court should have awarded the complainant his costs, and a reasonable allowance as an attorney's fee. (*Cochran* v. *Richmond &c. Co.*, 91 Va. 339, 341, 21 S. E. 664; *Berkeley & Harrison* v. *Green*, 102 *Va.* 378, 381, 46 S. E. 387; *Wilson* v. *Langhorne*, 105 Va. 64, 68, 52 S. E. 841.) We are not unmindful that it is somewhat unusual for this court

to modify a decree in respect to costs, and allowances in the nature of costs, while affirming it in all other particulars. (*Dillard* v. *Dillard*, 77 Va. 820; *Goodloe* v. *Woods*, 115 Va. 540, 551, 80 S. E. 108). As Judge Staples said in *Wimbish, Assignee,* v. *Blanks, Assignee,* 76 Va. 365, 369, "when this court has determined that the decree of the lower court is right upon the merits, it is not much inclined to interfere with the decision with respect to the costs, unless in a case of palpable error." The present case, however, appears to us to fall within the exception expressly recognized by the opinion in the *Wimbish Case,* and the other cases cited.

We deem it unnecessary, under the circumstances of this case, to remand it for a reference upon the amount to be allowed as counsel fees. The amount, so far as it is to be paid from the trust fund, should not be large. There was reason for the suit, but not, as we think, for the demand over which the greater part of the controversy was waged.

The decree complained of will be amended by directing that the appellant recover of the appellees his costs in the lower court, that he be allowed the sum of $150 as an attorney's fee, and that the bank stock shall not be delivered by him to the appellees until they shall have been paid him, in addition to the commissions they are required by the decree to pay him, the costs and allowance herein awarded him; and, as thus amended, the decree will be affirmed.

We are unable to hold, however, that he is the party substantially prevailing upon the appeal, and therefore, under the mandatory terms of the statute, Code, section 3548, the costs in this court must be awarded to the appellees.

*Amended and affirmed.*