# Richmond

## Evelyn Holdcroft Pritchett v. The First National Bank of Danville and Walter Squire, Executors, Etc.

November 30, 1953.

Record No. 4110.

Present, All the Justices.

The opinion states the case.

*Haw & Haw*, for the appellant.

*Meade, Talbott & Tate*, for the appellees.

MILLER, J., delivered the opinion of the court.

On February 11, 1950, the will of Charles W. Pritchett, a physician and resident of Danville, Virginia, who had died a few days previously, was admitted to probate. Testator's entire estate was disposed of in the will, and on the date of its probate The First National Bank of Danville and John Walter Squire, the named executors and trustees, qualified in their dual capacities and entered upon their duties.

The appraised value of the personal estate that came into the executors' possession, upon which a commission of five per cent was claimed, amounted to $290,775. Of that sum $143,220 was primarily derived from insurance, open accounts and bank deposits. The balance of $147,555 consisted of a note which with accrued interest, was valued at $2,045, a Cadillac automobile valued at $2,250, and stock in six local corporations appraised at $143,260. When the executors settled their account, the note, automobile and shares of stock were delivered in kind to the three residuary legatees entitled to receive them under the will.

A commission of $7,161, representing five per cent on the item of $143,220 of personalty, has been received by the executors. The real estate was not susceptible of partition in kind among the residuary devisees entitled thereto, and under the powers conferred by the will and with the acquiescence of all interested parties, it was sold by the fiduciaries in their capacity as trustees for $191,806.93. That was concededly a very good sale, and the trustees have received a five per cent commission of $9,590.34 on the sum obtained. Thus, as executors and trustees, the fiduciaries have received $16,751.34.

The additional sum of $7,377.75, namely, five per cent on the $147,555, the appraised value of the note, automobile and stocks delivered in kind, was claimed and retained by

the executors. That item was approved by the Commissioner of Accounts, but exceptions were taken to its allowance by the widow, Evelyn Holdcroft Pritchett, a residuary legatee.

Before determining whether or not the exceptions should be sustained and the item disallowed or reduced, the court heard the testimony of Landon C. Horne, vice-president and trust officer of The First National Bank, and the testimony of John Walter Squire as to the services performed by the executors. The exceptions were overruled, and from the order and judgment allowing the executors the $7,377.75, Evelyn Holdcroft Pritchett appealed.

Thus the question presented for determination is whether or not the executors are entitled to receive a five per cent commission on the $147,555, which was the appraised value at the time of testator's death of the shares of stock, note and car, all of which were later distributed in kind to the three residuary legatees; and if not, what is a reasonable compensation to be allowed them in this respect?

In Item I of the will, testator recited that he had insurance policies payable to his estate which would afford sufficient cash to pay all "taxes, debts and costs of administration," and he directed his executors to use the proceeds derived from that source for the purpose stated. Only in event that such funds were insufficient could the executors resort to the residuary estate for the payment of those charges.

In Item II of the will, testator bequeathed his "household furniture, furnishings, silverware, chinaware, pictures" and the other articles used in the residence to his widow, his granddaughter, Martha Clay Pritchett, and his son-in-law, John Walter Squire, and expressed the hope that they could amicably divide that property.

Following the bequest of this household property, several monetary gifts amounting to $28,000 were made to designated legatees. Testator then devised and bequeathed "in fee simple absolute" one-third of the residue of his estate to John Walter Squire. The other two-thirds of the residue

he devised and bequeathed to The First National Bank of Danville and John Walter Squire as trustees, and the trustees were directed to divide the trust estate into two equal parts and keep separate accounts for each.

One-half of the trust estate, *i.e.*, one-third of the entire residuary estate was to be held for the use and benefit of Charles Bernard Pritchett, testator's son. The trustees were empowered to use both the income and the principal of the son's part of the trust estate for his benefit, and at his death any unexpended part was to be held and dealt with as in the will directed.

The other one-half of the trust estate, *i.e.*, one-third of the entire residuary estate was to be held for the benefit of Evelyn Holdcroft Pritchett, but with "the absolute and unqualified right" on her part to withdraw from the trust estate at any time any part of the estate so held for her "until the whole thereof shall have been withdrawn."

The trustees were empowered by the will "to encumber, lease without limit as to term, sell and convey, at private sale, or public auction, any part of" the trust estate at any time or place and "upon such terms as to cash or credit as" they should deem proper. They were also expressly authorized to retain investments held by testator at the time of his death, if, in their judgment, they deemed such retention wise and expedient.

Exclusive of nine shares of preferred stock of the par value of $100 per share, all of the securities, exclusive of the note, that came into the executors' possession were common stocks. They consisted of ninety shares of Virginia-Carolina Broadcasting Company, about 3,500 shares of the common stock of four local banks, and 4,780 shares of the stock of Dan River Mills, Incorporated. The stock of the latter corporation had an appraised value of $14.75 per share as of the date of the testator's death.

The money derived from the insurance, bank deposits and accounts receivable was more than sufficient to pay all debts, taxes, costs of administration and pecuniary bequests. More

than $20,000 in cash was left for distribution to the residuary legatees. Thus there had been no financial necessity to sell any of the stocks, and the executors had held them intact.

On March 20, 1951, before the executors' accounts were finally settled, and thus before the trust had been actually established, Evelyn Holdcroft Pritchett elected to take absolute ownership and possession of her one-third of the residuary estate and to receive her share of the stocks in kind. At the same time the trustees set up the trust of Charles Bernard Pritchett and on his behalf took charge of his share of the estate and elected to receive his portion of the stock in kind, and John Walter Squire received his share of the estate and one-third of the stock in kind.

From the statement of the executors of May 14, 1951, it appears that when demand was made for delivery of the stocks in kind, they had increased in value and were then worth $169,380. Thus each of the residuary legatees, Evelyn Holdcroft Pritchett, John Walter Squire, and the trustees for Charles Bernard Pritchett, received about $56,460 worth of stock when it was distributed on May 26, 1951. The over-all sum that each obtained was $64,871.65, and that was arrived at by the acceptance by each legatee of one-third of the stock, and the acceptance of the note and Cadillac car by John Walter Squire, and the distribution to him of a lesser part of the cash than was allotted to the other two residuary legatees. The increased value of the stock was almost entirely due to the fact that the stock in Dan River Mills, Incorporated, was then worth $20 per share.

Section 26-30, Code of 1950, which provides for the allowance of expenses and commissions to fiduciaries reads as follows:

"The commissioner, in stating and settling the account, shall allow the fiduciary any reasonable expenses incurred by him as such; and also, except in cases in which it is otherwise provided, a reasonable compensation, in the form of a commission on receipts, or otherwise."

The executors prepared and filed the required State inheri-

tance, income and property tax returns, and the Federal estate and income tax returns. These duties were performed without the expense of employing counsel, but no unusual difficulty was encountered, for the returns as prepared were approved by the taxing authorities. It also appears that the payment of the Federal tax upon the widow's share of the estate before it was transferred to trustees resulted in saving a considerable sum.

Though the executors undertook the collection of the open accounts, the doubtful and difficult ones were turned over to a competent attorney who, upon collection, remitted to the fiduciaries. One action at law was instituted by the widow against the executors in which she asserted claim to considerably more household furnishings than the one-third part given her under clause II of the will. Counsel was employed to defend this action, and the litigation was successfully terminated.

■ Appellees assert that all of the stocks and especially the stock in Dan River Mills, Incorporated, a textile manufacturing company, were speculative in nature. They claim that they had the right and were empowered to sell all of these securities but elected at some risk to themselves to retain the stock, and that the exercise of this discretion resulted in an increase of about $25,000 in its value. The circumstances that prompted the executors to retain the stock, especially in Dan River Mills, Incorporated, and the risk incurred was stated by Landon C. Horne, as follows:

"Q. I believe you held them over a year after Dr. Pritchett's death and never did make disposition until Mrs. Pritchett elected to take over her one-third of the estate and elected to take a distribution of the stock in kind.

"A. That is true, but at the time of the executors' qualification that stock was appraised at 14¾ per share. We felt, in view of conditions as they were at that time, that the low point had probably been reached, and even though the stock is not considered a high grade investment, that it could be held to the advantage of the estate. This proved to be true,

for the reason that the stock was quoted at 20 on date of distribution, and there were 4,780 shares in the estate. That was merely an exercise of judgment on the part of the executors.

"Q. Then the judgment of the executors was that neither of the executors of the estate was running any risk, and, therefore, you held the stocks?

"A. No, we don't say we were not running any risk. We say the executors took upon themselves the responsibility of running the risk.

"Q. Were the executors expected, in the event the stock went down before it was sold, to make good your losses?

"A. No, sir.

"Q. Then you were not taking any risk, were you?

"A. We were taking the risk of a possible suit for surcharge, which could have been a risk."

No provision of the will forbade the sale of the stock. Thus the language of section 64-143, Code of 1950, "the personal representative shall not sell estate which the will directs not to be sold," did not preclude such action by the executors. Had they, in the exercise of a reasonable discretion, concluded that the stocks were likely to decrease in worth and their value be impaired, they would have had the right to dispose of them as authorized and directed by section 64-144, Code of 1950. *Virginia Trust Co., Ex'r., etc.* v. *Evans, et al.,* 193 Va. 425, 69 S. E. (2d) 409. Yet as fiduciaries, it was their duty to exercise the highest fidelity and utmost good faith in how they dealt with the estate. Their information and knowledge of the character and worth of the securities prompted the conclusion that it was to the best interest of the estate to retain them intact. That being true and there being no direction in the will to sell or necessity to do so, they enjoyed no right to sell. So long as they, in good faith and in the exercise of a reasonable discretion, deemed it to the best interest of the estate to retain the stocks, they were obligated to do so.

■ The information and knowledge that the executors possessed prompted them in the exercise of their discretion to retain the securities. That retention ultimately redounded to the benefit of the legatees and may be considered in arriving at a proper compensation to be allowed, but it is not a controlling circumstance.

■ In the recent case of *Virginia Trust Co., Ex'r, etc.* v. *Evans, et al., supra,* the decisions dealing with what is reasonable compensation to be allowed personal representatives when a part or the whole of the administered estate is distributed in kind were collected and reviewed. There, as here, the dominant question to be decided was whether or not the executor should be allowed five per cent commission upon the appraised value of stock delivered in kind to residuary legatees.

In determining that a commission of two and a half per cent upon the appraised value of the stock delivered in kind was reasonable and sufficient, Mr. Justice Spratley said:

"Generally speaking, the power of the fiduciary to sell means the authority given by statute, or by the instrument creating the trust, or the capacity inherent in the functioning of the office of the fiduciary. On the other hand, the right to sell is used in the sense of doing that which is proper or correct, in adherence to duty and necessity. However that may be, compensation for the fiduciary is to be measured not solely by the power or right of the fiduciary to sell or not to sell; but as we have said by taking into consideration, 'The value of the estate, the character of the work, the difficulties encountered, and the results obtained.' " (At page 432.)

In some instances, as in this case, other circumstances, such as the responsibilities assumed and the risks incurred, are also proper elements to be considered in arriving at a just and fair compensation.

The course pursued by the executors was to the interest of the estate and the results obtained were beneficial to the residuary legatees. Yet the statements and accounts filed in

the record and the testimony given when the exceptions to the Commissioner's report were heard do not show that any unusual responsibilities were incurred or extraordinary services rendered. The administration of the estate was attended with no more than ordinary difficulties, and the transactions required of the executors were comparatively few and simple. In their dual capacity as executors and trustees, they have already received $16,751.34. The claims of the litigants have been fully developed and presented, and under the provisions of section 8-493, Code of 1950, we should now determine what additional sum, if any, shall be paid the executors. The allowance to them of a further commission of two and a half per cent on $147,555, the appraised value of the property distributed in kind, will afford reasonable compensation for their services.

The order and judgment appealed from will be reversed, and the cause remanded to the trial court for the entry of an order allowing the executors the sum of $3,688.87, and for such further proceedings therein as may be proper and not in conflict with the views herein expressed.

*Reversed and remanded.*