# Richmond

MOSBY G. PERROW, JR., EX'R, ETC. v. VIRGINIA W. PAYNE.

October 9, 1961.

Record No. 5299.

Present, Eggleston, C. J., and Whittle, Snead, l'Anson and Carrico, JJ.

*S. Thomas Martin* and *Cecil W. Taylor* (*Williams, Martin & Taylor*, on brief), for the appellant.

*Douglas A. Robertson* (*Williams, Robertson & Sackett*, on brief), for the appellee.

I'ANSON, J., delivered the opinion of the court.

Mosby H. Payne, a resident of Appomattox County, Virginia, but also maintaining a residence in New York City where he practiced medicine for a number of years, died testate on March 29, 1952. His will was probated on April 2, 1952, and on the same day Mosby G. Perrow, Jr., who was named as executor therein, qualified as such and entered upon his duties.

The inventory and appraisement of the estate showed total assets of $142,647.13. The assets with their values are listed as follows: $5,138.57 in money; 552 shares of American Telephone and Telegraph Company common stock, $85,077; other common stock, $128;

United States treasury bonds with accrued interest, $12,852.19; a $100 savings and loan certificate; tangible personal property, $4,306-.37; and real estate, $35,000.

On November 20, 1955, the executor filed his first accounting with the commissioner of accounts covering his transactions from April 2, 1952, through October 31, 1955. The accounting was approved by the commissioner, and, there being no exceptions filed thereto, it was confirmed by the court on February 2, 1956. In this accounting the executor was allowed $5,000 on account as commissions, payable out of the principal assets of the estate; a five percent commission of $843.06 on the income of $16,861.22, covering amount received through December, 1954; and reimbursement of $127.01 for expenses incurred. No commissions were requested in this accounting on income of $6,700.10 received from January 1, 1955, through October 31, 1955.

The executor filed his second and final accounts with the commissioner on October 29, 1959, covering his transactions from the terminal date of the first accounting to September 30, 1959. A corrected accounting shows income of $23,123.32. A statement of the assets of the estate shows an increase from $142,647.13 to $167,883.43, which was due principally to a three-for-one split of the American Telephone and Telegraph Company stock, increasing the number of shares from 552 to 1656 and the appraised value from $85,077 to $128,133, and $9,911.30 from the sale of stock rights issued by the company. On this statement there appears a notation that the executor was turning over all of the assets of the estate to himself as trustee, pursuant to the terms of the will. Included in the assets to be delivered in kind were the 1656 shares of American Telephone and Telegraph Company stock and the United States Treasury bonds which came into the executor's possession upon his qualification.

In his final accounts filed with the commissioner the executor claimed and requested approval of $2,450 as additional compensation on the principal account, $1,250 of which was listed as "On account of executor's commissions, and fee adjustments;" and $3,842.16 as compensation on the $29,823.42 income account, $2,500 of which was listed as "On account of executor's commissions, and fee adjustments," for the period covering January 1, 1955, through September, 1959. Virginia W. Payne, the widow of the testator and life beneficiary of the estate, filed exceptions to the accounts with the commissioner, claiming that the executor had overpaid commissions to himself and

questioning the payment of certain other items. After a hearing the commissioner overruled the exceptions and approved the accounts.

Mrs. Payne then filed exceptions in the circuit court to the commissioner's approval of the accounts. The executor's motion to dismiss the exceptions was overruled, to which he duly excepted and then filed his answer. After an *ore tenus* hearing the trial court, in a communication addressed to counsel, overruled all the exceptions except the one relating to the question of compensation and held that the first accounting approved by the commissioner and confirmed by the court was final under Code § 26-34[1], and the payments of the commissions set out therein must be allowed in full, but that the allowance to the executor for commissions and expenses in the first accounting, amounting to $5,970.07, was adequate compensation for all work done as executor; that all commissions claimed in the second and final accounting be forfeited and disallowed for failure of the executor to timely file his accounts pursuant to §§ 26-17[2] and 26-19[3], Code of

[1] "§ 26-34. Effect of confirmation.—The report, to the extent to which it may be so confirmed by an order of the court or judge upon exceptions filed, or in whole when confirmed by lapse of time without exceptions, as provided in the preceding section, shall be taken to be correct, except so far as it may, in a suit, in proper time, be surcharged or falsified; but no person who was a party to exceptions filed to the report shall bring suit to surcharge or falsify the report, and in such case the action of the court on the report shall be final as to such party, but may be appealed from as in other suits in equity."

[2] "§ 26-17. Annual settlement of fiduciaries' accounts.—A statement of all money and other property which any personal representative, guardian, curator, or committee, or any trustee acting under a trust created by any recorded instrument except those named in § 26-15, has received, or become chargeable with, or has disbursed, within one year from the date of the order conferring his authority, or from the date of the trust or within any succeeding year, together with the vouchers for the disbursements, and a statement of cash on hand or in bank and all investments held at the terminal date of the account, shall, within four months after the end of every such year, be exhibited by him before the commissioner of accounts of the court wherein the order conferring his authority was made, or of the court wherein the instrument creating the trust was first recorded; and the commissioner shall state, settle and report to the court an account of the transactions of such fiduciary, as provided by law. Every such fiduciary shall also, at the request of the commissioner to whom he is required to exhibit the foregoing statements, exhibit to the commissioner the securities held by him together with a statement of every bank in which cash is held at the terminal date of the account.

"The commissioner shall enter in his record book, in a separate column, the date of each settlement of fiduciary accounts made by him."

[3] "§ 26-19. When fiduciaries to forfeit their commission, etc.—If any such fiduciary wholly fail to lay before such commissioner a statement of all matters required in § 26-17 together with all other statements and items therein required for any year, within four months after its expiration, and, though a statement be laid before the commissioner, yet if the fiduciary be found chargeable for that year with any money

1950; that the amount of attorney's fee claimed be reduced from $2,500 to $1,000; and that a request of counsel for $1,000 as attorney's fee for the representation of the executor in the hearings on the executor's accounting be denied.

The executor having paid to himself $2,342.16 as commissions on the income and an attorney's fee of $1,500 out of the income account, and $1,450 as commissions and an attorney's fee of $1,000 out of the principal account, the court entered an order awarding personal judgments against Perrow in the amount of $3,842.16 in favor of Virginia W. Payne, the life beneficiary of the income account, and for $1,450 against him in favor of the estate. From this order we granted an appeal.

The executor contends that the court erred in holding: (1) that the executor had forfeited his commissions claimed in the final accounting because the exception sustained by the court was directed only to the reasonableness of the amount claimed for services as executor and attorney, and there was no contention in any of the exceptions filed that he had forfeited his commissions for failure to timely file his accounts; (2) that he had received adequate compensation in his first accounting for all services rendered as executor; (3) that he was entitled to an attorney's fee of only $1,000 for legal services rendered to the estate; and (4) that the executor's attorney was not entitled to a fee for representing him in this proceeding.

The executor is a prominent attorney. He was a close kinsman and personal friend of the testator and the will shows that the testator had implicit confidence in his ability and integrity. There was not the slightest intimation of fraud or dishonest conduct on the part of the executor in the handling of the estate.

The testator, after directing that all debts and necessary expenses be paid, and providing for two monetary gifts in the total amount of $6,000 to the trustees of a local church, devised and bequeathed the residuary estate in trust to Mosby G. Perrow, Jr., as trustee. By the terms of the trust created the trustee was directed to pay over the net income therefrom to the testator's widow, Virginia W. Payne, for life, and if the income from the corpus of the trust was insufficient

or other property, not embraced in the statement, he shall have no compensation for his services during such year, nor commission on such money or other property unless allowed by the commissioner for good cause shown; the commissioner's action in such case shall be subject to review by the court on exceptions by any interested person. This section shall not apply to a case in which a fiduciary has laid a statement of his accounts within such year before a commissioner in chancery who in a pending suit has been ordered to settle his account."

for the widow's maintenance and support the trustee was authorized to pay to her such part of the principal as he deemed in his discretion to be adequate. Upon the widow's death the testator directed that the trust be administered by the trustee for the purpose of providing scholarships for deserving students from Virginia in three named educational institutions.

Under the provisions of the will Perrow, as executor and trustee, was invested with every discretionary right and power which the testator could have exercised over his estate prior to his death. He was given the power to hold the investments coming into his hands as executor and/or trustee, or to sell, exchange, invest, and reinvest any and all of the assets of the estate which he may determine in his discretion to be in its best interest, except that before the plantation estate could be sold the consent of Virginia W. Payne, the widow, if living, must first be obtained. And further, he was given the absolute discretion of determining whether funds coming into his possession as executor and/or trustee would be treated as principal or income, or part principal and part income, and he was not to be held liable for any mistake of law or fact or both, or for errors of judgment, or for any loss coming to the estate or trust created, or to any beneficiary or other person except through actual fraud and willful misconduct on his part as executor or trustee.

The executor first contends that the only exception sustained by the trial court was directed to the reasonableness of the amount claimed for his services as executor and attorney, and the issue of forfeiture of commissions claimed in the final accounting was not before the court for determination. From a reading of the exceptions we think that the contention is well taken.

Section 26-33, Code of Virginia, relating to exceptions to the report of a commissioner of accounts, so far as it is pertinent here, reads as follows:

"The court, or judge in vacation, after one month from the time the report has been filed in its office, shall examine such exceptions as have been filed. It shall correct any errors which appear on the exceptions and to this end may commit the report to the same or another commissioner, as often as it sees cause; or it may cause a jury to be empaneled to inquire into any matter which, in its opinion, should be ascertained in that way; or it may confirm the report in whole or in a qualified manner, and shall certify in the order that it has made a personal examination of the exceptions."

No particular form or formality is required when stating and filing exceptions to the commissioner's report, but the exceptant must specify with reasonable certainty the particular grounds of the objections relied upon so that the adverse party may know what he has to meet and the court what it has before it for review. Lamb's Virginia Probate Practice, § 109, pp. 214, 215; 34 C. J. S., Executors and Administrators, § 887, p. 1072-1073.

Section 26-19, Code of Virginia, *supra,* provides when fiduciaries shall forfeit their commissions. This section was formerly title 39, ch. 132, § 8, Code of Virginia, 1860, and prior to its amendment by Acts of Assembly, 1866-1867, ch. 279, p. 704, it provided, with some exceptions, for an absolute forfeiture of commissions of a personal representative when he failed to lay his accounts for any one year before a proper commissioner within six months (now four months) after the end of any such year. However, the present statute does not create an absolute forfeiture of commissions for failure to file an accounting within four months after the end of each year, pursuant to Code § 26-17. The allowance or refusal of commissions is a matter of discretion to be reasonably exercised under the circumstances of each case, and when exercised it is subject to review on appeal. *Dearing* v. *Walter,* 179 Va. 620, 623, 20 S. E. 2d 483, 484; *Harris* v. *Citizens Bank, Etc., Co.,* 172 Va. 111, 132, 200 S. E. 652, 660.

The commissioner of accounts, in the exercise of his discretion, approved the executor's second and final accounting after considering the exceptions, which did not raise the issue of a forfeiture of the executor's commissions for not timely filing his accounts, and it is not apparent on the face of the accounting that the approval was based on a fundamental error of law. Nor did the exceptant contend in the exceptions filed in the circuit court that the executor's commissions should be forfeited and disallowed because he did not file his second and final accounting pursuant to the requirements of the statute. Hence, the trial court erred in forfeiting and disallowing all commissions claimed in the second and final accounting because this issue was not before the court for determination.

What we have said should not be construed to mean that we condone and approve the failure of the executor to file his accounts in accordance with the requirements of the statute. The statute was passed for a salutary purpose and must be complied with except for good cause shown. Even a full and honest accounting, which has been delayed without excuse, does not relieve one of the forfeiture

created by the statute. See *McCready* v. *Lyon*, 167 Va. 103, 111, 187 S. E. 442, 445.

The executor next contends that the court erred in holding that the $5,843.06 allowed as commissions in the first accounting was adequate compensation for all services as executor, and in not allowing the additional commissions claimed. This is the most important issue in the case.

Compensation for fiduciaries is statutory in its origin and the statute governing the subject in Virginia is § 26-30, Code of 1950. It has remained unchanged since 1887 (§ 2695, Code of 1887) and it reads as follows:

"The commissioner, in stating and settling the account, shall allow the fiduciary any reasonable expenses incurred by him as such; and also, except in cases in which it is otherwise provided, a reasonable compensation, in the form of a commission on receipts, or otherwise."

What is "reasonable compensation" as provided by the statute, in a given case, has been the subject of much litigation in this Court. 8 Mich. Jur., Executors and Administrators, § 229 *et seq.* From an early date this Court has recognized that, by custom, an executor is usually entitled to commissions of five percent upon actual receipts. *Granberry's Ex'r* v. *Granberry*, 1 Wash. (1 Va.) 246, 250, 1 Am. Dec. 455 (1793). However, a five percent commission is subject to increase or reduction of this rate under peculiar circumstances. See *Williams* v. *Bond*, 120 Va. 678, 686, 91 S. E. 627, 629.

It will not be necessary for us to review all of the cases since the question presented in the present case deals mainly with the claim of commissions to be allowed the executor for distribution in kind (other than specific legacies) of the greater part of the assets of the estate, and we will refer only to the leading cases dealing with that subject. They are not all in complete harmony but are all in accord with the principle that an executor should receive some compensation and that it should be reasonable, except the cases of *Gregory* v. *Parker*, 87 Va. 451, 12 S. E. 801 (1891), and *Bliss* v. *Spencer*, 125 Va. 36, 99 S. E. 593 (1919), which have not been subsequently followed.

In *Allen's Ex'x* v. *Virginia Trust Co.*, 116 Va. 319, 82 S. E. 104 (1914), the executrix was allowed a commission of five percent on the value of stocks distributed in kind without referring to the rule of not allowing any commission set out in *Gregory* v. *Parker, supra.*

In *Jones* v. *Virginia Trust Co.*, 142 Va. 229, 128 S. E. 533 (1925), the trial court allowed the executor commissions of five percent on the

appraised value of stock which was distributed in kind. On appeal this Court concluded that the rule of not allowing any compensation on property bequeathed (and not the subject of a specific legacy) and delivered in kind was too strict, but that the rule in the *Allen* case, *supra*, allowing a commission of five percent, was too liberal. The lower court was reversed and the case was remanded to the trial court to fix reasonable compensation, which obviously was to be an amount less than five percent.

While this Court did not determine what was reasonable compensation in *Jones* v. *Virginia Trust Co.*, *supra*, it made the following significant statement:

"Inasmuch as the statute fails to lay down a hard and fast rule, we are of the opinion that the Court should not do so. To us, a fair construction of the statute seems to be that if the fiduciary sells property, of whatever kind, he is generally entitled to a commission of five percent on the receipts. If he has a right to sell, but those entitled to the proceeds of the sale prefer to take the property in kind, then he is generally entitled to receive five percent commission upon the appraised value of the property. If he is not entitled to sell the property, but must deliver in kind (except in the case of a specific legacy) he is only entitled to a reasonable compensation to be fixed by the commissioner, or court, upon the proper proof of the expense incurred, the risk taken, and the services rendered in connection with the property so delivered to those entitled thereto." 142 Va. at pp. 241, 242, 128 S. E. at p. 537.

In *Grandy* v. *Grandy*, 177 Va. 601, 15 S. E. 2d 66 (1941), the rule as set forth in the *Jones* case, *supra*, was cited with approval, and a commission of five percent was allowed the executor on the appraised value of all intangible property and real property of the estate. In making the allowance the Court considered the difficulties encountered, the intent of the testator, and the expressed testamentary authority of the executor to sell.

In *Swank* v. *Reherd*, 181 Va. 943, 27 S. E. 2d 191 (1943), a commission of five percent was allowed on the value of real estate turned over in kind, reversing an allowance of two percent allowed by the trial court, on the ground that the will directed the executor to convert the real estate into cash. The rule in the *Jones* case, *supra*, was also cited with approval.

In *Virginia Trust Co.* v. *Evans*, 193 Va. 425, 69 S. E. 2d 409 (1952), the will did not direct that any of the property be sold or not sold. Included in the total appraised value of the personal property in the

residuary estate of $73,331.75 were stocks valued at $58,952.92, which the executor delivered to residuary legatees in kind, and a $5,000 Dominion of Canada bond which the executor sold for $4,443.75. A commission of five percent was claimed on the entire residuary estate, but this Court affirmed an allowance by the court below of two and one-half percent on the value of the stocks delivered in kind and five percent commission on the proceeds of the Dominion of Canada bond.

In rejecting the argument of the executor in the above cited case that he was entitled to five percent commission on all the residuary personal property because the "power to sell" has the same meaning as the "right to sell," referred to in the rule in the *Jones* case, *supra*, this Court, speaking through Mr. Justice Spratley, said:

"Generally speaking, the power of the fiduciary to sell means the authority given by statute, or by the instrument creating the trust, or the capacity inherent in the functioning of the office of the fiduciary. On the other hand, the right to sell is used in the sense of doing that which is proper or correct, in adherence to duty and necessity. However that may be, compensation for the fiduciary is to be measured not solely by the power or right of the fiduciary to sell or not to sell; but as we have said by taking into consideration 'The value of the estate, the character of the work, the difficulties encountered, and the results obtained.' " 193 Va. at p. 432, 69 S. E. 2d at pp. 413, 414.

The latest pronouncement of this Court on the amount of compensation an executor is entitled to receive on tangible and intangible personal property delivered in kind was in the case of *Pritchett* v. *First National Bank*, 195 Va. 406, 78 S. E. 2d 650.

In the *Pritchett* case the estate consisted of cash in the amount of $143,220; stocks in six local corporations, a note plus interest, and an automobile, with a total value of $147,555; and real estate which was sold for $191,806.93. The will expressly authorized the trustees, who were also named as executors therein, to sell and convey any part of the estate or to retain investments held by the testator at the time of his death, if in their judgment they deemed such retention wise and expedient, and directed, after providing for the disposition of certain personal property and monetary debts, that the residuary estate be divided into three parts. One-third was devised and bequeathed to the son-in-law. The other two-thirds was devised and bequeathed to the son-in-law and the First National Bank of Danville as trustees, one-half of which was to be administered by them for the benefit of

the testator's son, and the remaining one-half for the benefit of the testator's widow. The widow elected, under the terms of the will, to withdraw all of the funds held in trust for her before the executorial accounts were settled, and her share of the estate was taken in stocks. The commissioner of accounts allowed the executors five percent commission on the cash item, the money derived from the sale of the real estate, and on $147,555 representing the value of stocks, a note, and an automobile, which were all delivered in kind to the legatees.

The widow excepted to the allowance of five percent on the assets delivered in kind. The trial court overruled the exception and confirmed the commissioner's report. On appeal we reversed that part of the judgment of the lower court allowing five percent commission on the value of the stocks, note and automobile delivered in kind; and held that a commission of two and one-half percent was reasonable compensation since the will did not direct that the stocks be converted into cash; and that the "right to sell" was not present when there was no duty or necessity to sell and to do so would be to the disadvantage of the estate; citing *Virginia Trust Co.* v. *Evans, supra.*

A consideration of the above principles emphasizes that we still cannot lay down a hard and fast rule in determining what is reasonable compensation because of the many factors involved. As said by Justice Holt in *Trotman* v. *Trotman*, 148 Va. 860 at p. 868, 139 S. E. 490 at p. 492, the word "reasonable" as used in the statute "is but another way of saying that they [commissions] are to be measured by the conscience of the court." Hence, for guidance, we must rely on general principles that a personal representative is entitled to a reasonable reward, to be measured by the value of the estate, the services rendered, the responsibility assumed, the results obtained, the intention of the testator (if it can be determined from the language used) and the further consideration of whether it reasonably appears necessary to sell real property (where given that right under the will) or tangible and intangible personal property, where the will does not direct a sale, in order to provide an equal distribution of the assets to the legatees or devisees, or to protect the interest of the estate, instead of making a distribution in kind.

The executor argues that even though we held in *Virginia Trust Co.* v. *Evans, supra,* and *Pritchett* v. *First National Bank, supra,* that a commission of two and one-half percent was reasonable compensation on tangible and intangible personal property distributed in kind, those cases have no application to the present case because this is a case of

retention of securities rather than of distribution. The answer to this argument is found in the *Pritchett* case. There, as in the present case, the executors were also the trustees under the trust, and a part of the stocks of the estate was retained by the same parties, as trustees, upon closing the executorial accounts.

■ The executor further argues that he is entitled to five percent commission on the increased value of the American Telephone and Telegraph Company stock as of the time of the filing of his final executorial account. There is no merit in this argument. In the *Pritchett* case we said, 195 Va. at p. 413, 78 S. E. 2d at p. 653, that even though the retention of the stock, which was speculative, "ultimately redounded to the benefit of the legatees and may be considered in arriving at a proper compensation to be allowed, * * * it is not a controlling circumstance." See also *Williams* v. *Bond, supra,* 120 Va. at p. 688, 91 S. E. at p. 630.

In the present case the executor was authorized by the terms of the will to retain the American Telephone and Telegraph Company stock and all other securities held by the testator at the time of his death, or to sell the same. He elected to retain the stocks and bonds and to deliver them to himself as trustee upon approval of his final accounting, because in his judgment it was in the best interest of the estate to retain the securities rather than to sell them. American Telephone and Telegraph Company stock is widely regarded as a "blue chip" investment and is approved for trust funds in Virginia. Hence, there appeared no reason or necessity for selling the stock. The only service rendered by the executor was to hold the stock as its custodian. Moreover, under the broad terms of the will the executor would not have been liable for any mistake in judgment had the stock decreased in value.

In administering the estate the executor was able, without difficulty, to obtain the consent of the State tax department to waive the assessment of an inheritance tax because the New York authorities claimed that the testator was a resident of that State and assessed an inheritance tax against the estate. The actual preparation of the tax returns involved no unusual problems. He sought unsuccessfully, through the services of a New York attorney who was paid out of the funds of the estate, to bring into the assets of the estate a joint account of $16,000 on deposit in a New York bank. He spent two days in New York in an effort to clear up the tax and deposit questions, and his expenses for this were paid by the estate. The duties performed by

the executor in administering the estate were not unusual, except that as an attorney he instituted and conducted a chancery suit in the Circuit Court of Appomattox County to clear the title to the real estate owned by the estate, which was sold with the consent of the widow in accordance with the terms of the will. No attorney's fee was requested or allowed in the chancery suit, but the trial court considered this service in allowing a fee on the hearing of the exceptions to the accounting.

We are of opinion that a commission of two and one-half percent on the value of the American Telephone and Telegraph stock, the savings and loan stock certificate, other stocks and bonds as shown in the inventory and appraisement, which were all delivered in kind, and five percent on the money, the appraised value of all the tangible personal property which was sold, and the proceeds from the sale of the farm and the timber at the corrected total appraised value of $29,000, is reasonable compensation for services rendered by the executor. Based on these percentages the executor was entitled to a sum slightly less than the $5,000 paid to himself out of the principal assets of the estate under the first accounting which was approved by the commissioner of accounts and confirmed by the court. But under Code § 26-33 that accounting is final and conclusive, and the payment of the $5,000 is allowed in full. See *In re Peper* v. *Bell*, 286 Mo. 126, and cited as *Peper* v. *Reynolds* in 226 S. W. 550, 553; 34 C. J. S., Executors and Administrators, § 880, g., p. 1059.

Under the ruling of the court below, all commissions claimed under the second and final accounting on the income account of $29,823.42, and $5,387.52 of the $9,911.30 credited to the principal account from the sale of the American Telephone and Telegraph Company rights, which items were not taken into account in the first accounting, were forfeited and disallowed. As previously pointed out, this was error. Hence, the executor is entitled to a commission of five percent on the income account, which amounts to $1,491.17, and this will reduce the personal judgment entered by the lower court against Perrow in favor of Mrs. Payne from $3,842.16 to $2,350.99. He is also entitled to a commission of five percent on $5,387.52 derived from the sale of American Telephone and Telegraph Company rights, which amounts to $269.38, and this will reduce the amount of the personal judgment of $1,450 in favor of the estate to $1,180.62. *Williams* v. *Bond, supra; Virginia Trust Co.* v. *Evans, supra; Bickers* v. *National Bank, Ex'r*, 201 Va. 257, 260, 262, 110 S. E. 2d 514, 516, 518.

The executor next says that the allowance of only $1,000 as

attorney's fees for legal services rendered by him to the estate, instead of the $2,500 fee approved by the commissioner of accounts, was error.

The amount claimed as attorney's fees was listed in the final accounting under the headings of "Executor's commissions and fee adjustments." There was no separation of the amount in either the principal or the income accounts showing what was claimed as fees and what was claimed as commissions. The evidence taken in the circuit court, however, shows that of the $1,250 paid out of the principal account as "Executor's commissions and fee adjustments," $1,000 was claimed as attorney's fee and the balance as commissions. Of the $2,500 shown as paid out of the income account, $1,500 was for attorney's fee and the balance was commissions.

It is true that the language of the exception challenging the amount of the compensation approved by the commissioner of accounts did not specifically mention attorney's fees, but when we consider the language that was used in the light of that used in the accounting, the exception was broad enough to cover all compensation claimed by the executor as commissions and attorney's fees and it was so considered by the executor in his answer to the exceptions and in his brief. Hence, it will be deemed that the executor waived Mrs. Payne's failure specifically to mention in the exceptions the allowance of attorney's fees.

As previously pointed out, Perrow was not allowed an attorney's fee for instituting and conducting the chancery suit, which was necessary to clear the title for the sale of the estate's farm property. That suit was instituted in the same court and was passed on by the same judge who considered the question of the allowance of attorney's fees in this proceeding, and he was in a good position to determine what was a reasonable fee for that service. The $1,000 allowed as an attorney's fee for all services rendered the estate apart from the duties as executor was in the sound judicial discretion of the trial judge and we cannot say from the evidence that he abused this discretion. Hence there is no merit in this assignment of error.

The executor lastly contends that a fee should have been allowed his attorney for representing him in the hearings on the exceptions to his accounting.

This question was not dealt with in the executor's brief and it was not argued before us. It may be assumed that he abandoned this assignment of error. However, there is no merit in the contention

under the facts of this case. See 21 Am. Jur., Executors and Administrators, § 557, p. 694; Anno. 101 A. L. R. 808.

For the reasons given, the judgment order of the court below is modified as follows: that Virginia W. Payne recover from and have judgment against Mosby G. Perrow, Jr., for the sum of Two Thousand Three Hundred Fifty and 99/100 Dollars ($2,350.99) with interest from July 15, 1960, on account of the overpayment from the income account; and that the estate of Mosby H. Payne, deceased, recover and have judgment against the said Mosby G. Perrow, Jr., the sum of One Thousand One Hundred Eighty and 62/100 Dollars ($1,180.62), with interest from July 15, 1960, which amount represents the overpayment from the principal account. In all other respects the order is affirmed and the costs of this appeal are assessed against Perrow.

*Reversed in part; affirmed in part; and affirmed as modified.*