# CIRCUIT COURT OF THE CITY OF CHESAPEAKE

In re Estate of
Kenneta Irene Bone

November 21, 2014

Case No. (Civil) CWF12-32

BY JUDGE JOHN W. BROWN

This matter is before the Court on the request of a successor conservator to be reimbursed from the surety bond for fees and expenses incurred in taking over an estate from the court-removed predecessor conservator. The Court is of the opinion that the fees and expenses incurred by the successor conservator are reimbursable from the surety bond in an amount reflecting a reasonable rate for such fees and expenses.

## I. *Statement of Facts*

Kenneth R. Bone qualified as the conservator of the Estate of Kenneta Irene Bone (the "Estate"). Pursuant to his qualification, Mr. Bone obtained a bond issued by Selective Insurance Company of America as surety, naming him as its principal and the Commonwealth as its obligee. The bond was issued in order to secure Mr. Bone's faithful discharge of the duties as conservator and to protect the assets of the Estate from any undue depletions caused by him.

After filing the first accounting and increasing the value of the surety bond, Mr. Bone began missing his scheduled filing deadlines. It became clear that he would be unable to fulfill his duties, and the Court removed him as conservator. In his place, the Court appointed attorney John O'Keefe as successor conservator. Mr. O'Keefe has served in such a position for the Court on numerous prior occasions, and has a good knowledge of the law in this area and his duties as a replacement conservator. The matter was continued, and Mr. Bone was given a compliance date to file his final accounting. Mr. Bone again failed to file and did not appear at the hearing.

As a result, the matter was continued to determine whether the bond should be forfeited.

Following his assignment, Mr. O'Keefe began carrying out his duties as successor conservator, and sent Selective a bill for "charges related in taking over the Estate" in the amount of $4,654. Mr. O'Keefe thereafter sent Selective another bill in the amount of $7,425 for additional work performed, and indicated that he would request that the Court order payment from Selective of the fees incurred to date. All services included in the bills were charged at $275.00 per hour, Mr. O'Keefe's billable rate as an attorney.

At no point during either hearing were there any discussions regarding Mr. O'Keefe's method of payment.

## II. *Recovery from the Surety Bond*

The bond in question takes the form of a standard fiduciary's bond. It contains broad language representing that it will cover the costs incurred as a consequence of its principal's failure to fulfill its obligations. The terms of the bond do not limit its scope for payment related to assets which were unaccounted for or misappropriated. The purpose of the bond was to secure Mr. Bone's faithful discharge of his duties as conservator of the Estate and to protect the assets of the Estate from any undue depletions caused by him.

When a conservator fails to fulfill his obligations and is removed by a court, he has breached his fiduciary duties. It is clear that such a breach has been and/or will be harmful to the estate. Such harm is reasonably foreseeable. The determination of whether a fiduciary's bond will cover the harm caused by its principal does not require consideration of the character of the breach of fiduciary duties, only that such a breach occurred, and that it resulted in a specific harm. A specific harm to the Estate caused by Bone's defalcation amounts to costs incurred in taking over the Estate and performing the past due duties based on records that can be found. Therefore, the bond secured by Mr. Bone is liable for such costs.

As a matter of efficiency, Mr. O'Keefe is entitled to seek recovery directly from Selective. A conservator has the authority to both allow expenditures and initiate proceedings on the estate's behalf. *See* Va. Code § 64.2-2022. If Mr. O'Keefe were to bill the Estate for the fees and expenses accrued in taking it over, he would be afforded the right to seek recovery from the bond on behalf of the Estate in his role as conservator. If the conservator were to bill the estate for fees and expenses, obtain approval for them by the commissioner of accounts, and later seek to recover those expenses from the fiduciary's bond, it is unclear whether the bond issuer could contest the reasonableness of the already-approved, and likely unobjected-to, expenses. *See* Va. Code §§ 64.2-1208(A), 64.2-1213. Since the conservator would have already received his compensation from the estate, he would theoretically have less incentive to diligently seek recompense from the

bond issuer. This process would be less transparent than directly delivering a bill to the surety. Since the process of first billing the Estate is inefficient in this context, Mr. O'Keefe's transitive right to seek recovery from Selective need not be inhibited by it.

### III. *Reasonable Compensation and Allowance*

Mr. O'Keefe is seeking compensation and allowance for fees and expenses incurred in taking over the Estate. Such fees and expenses are necessary to the Estate's administration. Since, under ordinary circumstances, such fees and expenses would be billed to the Estate, Selective is only liable for those that would have been allowable to the Estate. Therefore, Va. Code § 64.2-1208, the statute governing fiduciary compensation of personal representatives, applies to this matter, and Selective is only liable for the fees and expenses to the extent that they are reasonable.

The determination of reasonableness is guided by the same rules and principles that would be utilized if the fees had been billed directly to the Estate. Since there are separate rules and standards of reasonableness regarding the compensation and allowance for services by conservators versus services by attorneys, consideration will need to be given to the nature of the services provided by Mr. O'Keefe.

### A. *Standard*

Va. Code § 64.2-1208 covers the expenses and commissions allowed to fiduciaries:

> In stating and settling the account, the commissioner of accounts shall allow the fiduciary any reasonable expenses incurred by him and, except in cases in which it is otherwise provided, a reasonable compensation in the form of a commission on receipts or otherwise.

Va. Code § 64.2-1208(A).

While there is no "hard and fast rule" for determining reasonableness, there are several factors to be considered, including: (1) "the value of the Estate," (2) "the services rendered and responsibilities assumed," and (3) "the difficulties encountered and the results obtained." *Perrow v. Payne*, 203 Va. 17, 26 (1961) (citation omitted); *Trotman v. Trotman*, 148 Va. 860, 868 (1927).

The *Guidelines for Fiduciary Compensation* set forth in 2004 by the Judicial Council of Virginia provide that, for non-attorney services, a 5% fee will be allowed for all non-investment receipts realized during each accounting period, and a 1% fee on the first $500,000 based on the market value of assets brought forward from a prior account. Further, if an attorney is employed, compensation may be given from the estate to

cover reasonable fees paid for legal services reasonably necessary, based on typical fees for such services. *See Clare v. Grasty*, 213 Va. 165, 170 (1972) (stating that fees for legal services are allowed, but only when reasonable for the services rendered, and only when necessary); *Perrow*, 203 Va. at 121.

*In re Estate of Eva Clark*, 85 Va. Cir. 143 (Fairfax Cnty. 2012), addressed the reasonableness of fees charged by an attorney-guardian to an estate. The court applied the test for reasonableness of attorney's fees established in *Chawla v. Burgerbusters*, 255 Va. 616 (1998), to determine whether the guardian's fees should be allowed, holding:

> In determining the reasonableness of fees, the fact finder may consider the following factors: (1) the time and effort expended by the attorney (fiduciary), (2) the nature of the services rendered, (3) the complexity of the services, (4) the value of the services to the client (ward), (5) the results obtained, (6) whether the fees incurred were consistent with those generally charged for similar services, and (7) whether the services were necessary and appropriate.

*Id.* at 146.

This Court finds that application of the *Chawla* standard to the issue of whether an attorney-conservator's fees are reasonable is appropriate.

B. *Analysis*

The Court is of the opinion that the bond is liable for reasonable fees and expenses incurred in taking over the Estate. However, the extent of the bond's liability cannot be determined without evidence indicating the nature and reasonableness of the services provided. In determining reasonableness, all legal services will be judged according to the *Chawla* standard and all non-legal services will be judged according to the standard established by the caselaw interpreting Va. Code § 64.2-1208. If the Court determines that fees and expenses for certain legal services are not reasonable, then the bond will be liable for an amount that is representative of a reasonable rate for such legal services. If the Court determines that fees and expenses for certain non-legal services are not reasonable, then the bond will be liable for an amount that is representative of a reasonable rate for such non-legal services in light of the circumstances.

IV. *Conclusion*

A review of the instant facts and application of the relevant caselaw reveals that Mr. O'Keefe is entitled to recover from the surety bond reasonable fees and expenses incurred in taking over the Estate. The Court finds that the fiduciary bond's purpose is to insure the fulfillment of its

principal's duties as conservator, and to provide for the replenishment of any depletion to the assets of the Estate unjustly caused by him. The principal failed to fulfil his obligations as conservator, resulting in costs incurred by his successor conservator in taking over the Estate. These costs would directly drain the Estate, leading to a depletion of assets caused by Mr. Bone's failure to perform his duties. As such, the elements that trigger the bond's necessity have been met, and the bond issued by Selective will be forfeited to cover the costs. To force the Estate of Ms. Bone, who is under a recognized disability, to cover the replacement conservator's expenses initially, in this case, would undoubtedly make her even more of a victim. The evidence demonstrates that over $119,000.00 is unaccounted for from when Mr. Bone was conservator. Mr. Bone's present whereabouts are unknown. The surety is in the risk management business and can take steps at initial appointments to ask the Court to put parameters on the fees charged by an attorney or CPA replacement, and for what tasks. The Court can consider the surety's position before appointment and before the costs are incurred.

The Court finds that bond is liable to the extent that the fees and expenses charged by Mr. O'Keefe are reasonable. The Court will allow evidence to be presented regarding the services provided by Mr. O'Keefe in taking over the Estate so that a further determination can be made regarding the extent of bond's liability.

Of course, the surety has already requested the right to proceed against the original conservator for any losses sustained under the indemnification terms of the bond. Those fees presently contested by the surety would likewise be a loss for which the surety could recover.