(131 So. 564)

**JONES et al. v. JONES.**

4 Div. 506.

Supreme Court of Alabama.

Dec. 18, 1930.

Wilkerson & Brannen, of Troy, for appellants.

A. G. Seay, of Troy, for appellee.

BOULDIN, J.

The bill was filed for the construction of the eighth item of the will of V. D. Jones, deceased. This item reads:

"Eighth: It is my desire, and I so will, that my executor, hereinafter named, for his services as such executor shall be paid out of my

estate amounts as follows: For collecting and receiving and disbursing, or dividing the corpus of my estate, whether the same be in money, the proceeds of property, or the division of property in specie, a total of five per cent (5%) of the amount received and disbursed, or the value thereof, and for managing said property and for receiving and disbursing the incomes thereof a total of ten per cent (10%) of the amount so received and disbursed."

The inquiry is limited to this: Shall the executor be allowed 5 per cent commissions on the value of the real estate of testator? That this question may be considered in the light of the will as a whole, the entire instrument appears in the report of the case.

The testator died in 1928, nearly ten years after the execution of the will. He left an estate in personalty of the value of some $200,000, consisting of some cotton and cattle, but in the main of money, stocks and bonds, notes, mortgages, and book accounts. He left real estate of the value of about $80,000. This consisted of the residence and two other lots in Troy, and many thousand acres of farm and timber lands, including more than seventy tracts and parcels, and located in three counties.

The widow, Nettie Jones, the son and executor, William Aubrey Jones, and three daughters, Nettie Folmar, Annie Laurie Brown, and Mollie Virginia Leslie, all beneficiaries under the will, still survive and are the parties to this suit.

After probating the will, the executor sold the chattels, and divided the proceeds, also divided certain moneys and stocks and bonds at face value, then, after appraising the value of notes, mortgages, and accounts, divided them into five portions of supposedly equal value, and made division among the beneficiaries by lot. Five per cent. commission on the personalty so distributed or divided has been paid. The youngest daughter having arrived at age prior to the death of the testator, no occasion arose for keeping the estate together as provided in the fourth item of the will.

The son and executor had been associated with his father in business and kept the books for many years; had made from time to time, and preserved, a record of all lands. With the aid of the husbands of his sisters and one or two outsiders, the lands were inspected and the values of the several tracts agreed upon. The widow first selected as her one-fifth part for life the home place in Troy. This was approved by the executor. Other devisees concurred. The executor then listed all the other lands, and apportioned them into four shares of substantially equal values. Division was made by lot and deeds executed accordingly by all the devisees.

The controlling question is: What did the testator have in mind as "the corpus of my estate" as employed in the eighth item of the will? This same form of expression is found in the fourth item directing that "the corpus of my estate" be kept together until the youngest daughter reaches the age of twenty-one years.

Without question, the testator here had in mind the entire estate, real and personal, as a unit, less specific chattels disposed of in the third item. Such is the obvious and natural import and meaning of "the corpus of my estate." Unless the context discloses a different intent, it must be so construed. "Personal estate" cannot be substituted or interpolated, unless the instrument itself, construed in the light of pertinent facts, discloses such intention.

One feature of the instrument itself is the employment of the same words "the corpus of my estate" to designate the subject-matter in both the fourth and eighth items. Presumably they refer to the same subject-matter. But we are not left wholly to the presumption of sameness in meaning.

The eighth paragraph itself, in its last clause, reads: "And for managing said property and for receiving and disbursing the incomes thereof a total of ten per cent (10%) of the amount so received and disbursed." "Said property" relates back directly to "the corpus of my estate" in the same paragraph, and identifies the same with the property managed under the fourth item of the will.

But appellants insist the executor's commissions are for "his services as executor"; that the will confers on him no power to make partition or "division * * * in specie" of the real estate; that the law confers on him no such power over the real estate, but does as to personalty; and, therefore, all services rendered in the division of the lands must be treated as rendered in his own interest as devisee.

This presents the question of most difficulty in the construction of the will with a view of finding the meaning of the commission clause.

True, of course, the executor by force of his office takes title to and possession of the personalty in trust, and the execution of the will involves a distribution of the personal estate. But the law gives an executor, as such, no power to make division of personalty in kind, binding upon the legatees without their consent and without an order of court. A division in kind may be ordered by the court on final settlement. Code, § 5948 et seq.

But we must observe the testator in this will in the ninth item declares the executor "shall serve as such without bond and with-

out accounting to any court whatever for his acts in and about his duties as such executor." This is noted, not that the testator could deprive beneficiaries of recourse to remedies in the courts for the proper administration of the trust, but that we may follow the mind of the testator. He contemplated no court proceedings in winding up and dividing his estate. Fixing the executor's commissions in the will was evidently in aid of such purpose.

Now, the will contains no express provision conferring authority to make division of personalty in kind. The real estate, subject to the life estate of the widow in one-fifth carved out for her, was devised to his children, share and share alike, by the sixth item of the will. And the personalty in like terms to the widow and the children, share and share alike by the seventh item. Neither of these items confers any express power on the executor to make division in kind. Such power must be gathered from the eighth item, read in connection with the will as a whole. The eighth item deals with "the corpus of my estate" as heretofore discussed.

Nowhere in the will does there appear any intention that services of the executor should be other or different as to personalty and as to real estate.

There is no need to determine whether the will confers a plenary power on the executor to divide the land at will and to make deeds as such; nor, indeed, that he is given such power in making division of personalty in kind. As to the widow's share in the land, he was to represent the devisees and agree with the widow on her share. and so effect a division to that extent.

Our conclusion is that the will contemplated a division of the estate as a whole after the expiration of the period it was to be kept together and managed by the executor; that in making such division the special knowledge and experience of the executor should be available; that, accordingly, the executor should take the lead and devote his services to the proper division of the entire estate.

We think the testator contemplated that such division should be made as it was made by mutual understanding and co-operation among his children; that, for the services thus rendered, the executor was to be awarded a commission on the entire estate received, disbursed, and divided in kind, both real and personal. "The corpus of my estate" must be so construed.

Affirmed.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.