## CIRCUIT COURT OF THE CITY OF LYNCHBURG

Scotty F. Elliott,
Co-Executor of the Estate
of Harvey Douglas Elliott,
Deceased and Individually

v.

Fidelity National Bank,
Co-Executor of the Estate
of Harvey Douglas Elliott,
Deceased

November 12, 1974

BY JUDGE WILLIAM W. SWEENEY

This matter is before me on exceptions to the Commissioner's report. A hearing was conducted in Lynchburg on September 13, 1974, at which time I withheld my decision. I have now had an opportunity to review the file and the briefs.

The material facts as stipulated by counsel are that Harvey Douglas Elliott died testate in the City of Lynchburg, Virginia, on October 14, 1969. His will (Exhibit 1) dated April 13, 1956, was probated in the Corporation Court for the City of Lynchburg, Virginia (now Circuit Court) on October 23, 1969, and was recorded at Will Book CC, page 124. Among other things, the will provided that all debts and expenses of the estate be paid; that a diamond ring go to the son, Harvey Douglas Elliott, Jr., and that the rest, residue, and remainder of the estate, real, personal and mixed, go in fee simple to the wife, Scotty Faulconer Elliott, who survived him. The Lynchburg National Bank and Trust Company of Lynchburg, Virginia (now the Fidelity National Bank), and testator's wife, Scotty Faulconer Elliott, were appointed co-executors. Both qualified as such on October 23, 1969. There was no qualification by the Bank as Trustee.

The inventory of the estate showed a total estate of $423,852.00, consisting of the following assets:

| | |
|---|---:|
| Real Estate | $282,500.00 |
| Stocks and Accrued Dividend | 13,471.95 |
| Note | 195.00 |
| Money and Accrued Interest | 122,470.26 |
| Tangible Personal Property | 5,215.00 |

The real estate consists of a one-half undivided interest in land and buildings on Mayflower Drive in Lynchburg, Virginia, and in land and a building in Glasgow, Virginia. Both properties have written leases providing for options to purchase.

In the administration of the estate, the will provided that the executors should have all rights, powers, and duties conferred upon them by law and, in addition, the right to sell any property, real or personal, forming or constituting a part of the estate. Further, the executors were given express powers by the will to carry on any business, to borrow and to pledge or mortgage property, to compromise and adjust any claims "and especially any claims, differences, or controversies which arise with respect to any property of any kind at any time constituting or forming a part of decedent's residuary estate and the incomes therefrom, and to do any and all things that are deemed best for the protection, preservation, collection and realization of the residuary estate;" to retain properties, real or personal, and to invest the residuary estate in income-producing properties, real or personal.

The compensation schedule for the executors was expressly set out in the will as follows:

> That "The Lynchburg National Bank & Trust Company, of Lynchburg, Virginia, shall have and receive as compensation for its services as Executor of my estate the following commissions: a sum equal to five per centum (5%) of the first twenty-five thousand dollars ($25,000.00) of the corpus or principal of my estate, four per centum (4%) of the next seventy-five thousand dollars ($75,000.00) of the corpus or principal of my estate, and three per centum (3%) of the residue of such corpus or principal, and also five per centum (5%) of all incomes as and when collected by it as Executor during the period of administration, and it shall have and receive as full compensation as Trustee here-

under a commission of five per centum (5%) of all income collected by it as Trustee."

Should my wife, Scotty Faulconer Elliott, qualify and act as Executrix along with said Bank, for her services she shall be entitled to the difference between five per centum (5%) of the corpus of my estate and the amount charged by the Bank under the aforesaid schedule.

The co-executor, Scotty Faulconer Elliott, approved the first accounting containing Bank commissions as provided in the will.

There are four issues before the Court:

1. What commissions, if any, is the Bank entitled on the real property?

2. What commissions, if any, is the Bank entitled on rental income?

3. Should the commissions charged by the Bank be disallowed or reduced?

4. Has the Bank forfeited its rights to certain commissions by a failure to file accountings on time?

Questions three and four can be answered without difficulty. It seems clear under Virginia law that a testator has the right to fix the amount of compensation to be paid his executor under the will. See *Darlings Ex'r v. Cumming*, 111 Va. 637, 69 S.E. 940 (1911). The Court there said:

All question of the commissions to which the executor and trustee is entitled in the case is, we think, clearly settled by the will itself. The testatrix had a right, apart from the law, to fix the compensation the appellant should receive for the onerous and long lasting continued duties imposed upon him by her will, and having done so her wishes in that regard must be respected and carried out. *Id.* at 640-641.

Where the testator fixes the amount of compensation to be paid his executor in the will, the executor is entitled to no more and no less than that amount. It is not a question of whether the compensation stated in the will is too little or too much, but it is a matter of contract. *See Williams v. Bond*, 120 Va. 678, 91 S.E. 627 (1917). The will in question was drawn by an experienced attorney at a time when the testator and the Bank were fully capable of contracting with each other on the matter of commissions. Their agreement must be upheld.

Next, counsel for the widow claim that the Bank forfeited its right to a commission on the second accounting since the account was not filed within the sixteen-month period from the date of death as prescribed by

law. The reason for this, however, was that the widow, as co-executor, failed or refused to sign the account and held it beyond the statutory period. The account was sent to her by the Bank in the thirteenth month following decedent's death. Under the circumstances, the Commissioner ruled, in his discretion, that commissions should not be forfeited. The forfeiture of commissions under Virginia Code, § 26-19, is not absolute, and the Commissioner has discretion to either allow or refuse commissions according to the circumstances in each case. *See Perrow v. Payne*, 203 Va. 17, 121 S.E.2d 900 (1961). I cannot say that the Commissioner of Accounts abused his discretion in allowing commissions for this accounting.

There remain the first two issues which are closely related. The question is whether the Bank, as executor, was entitled to charge commissions on the real estate and rental income.

The will in question provides that commissions be paid on the "corpus or principal" of the "estate." The word "corpus" means "body" or "mass." *Black's Law Dictionary*, 3d ed., p. 443. "Principal" is another word for corpus or capital of an estate. The "corpus" or "principal" of an estate refers to the principal asset or fund of the estate as distinguished from income of the estate. "Estate" is by definition "the property (*real or personal*) in which one has a right or interest." *Black's Law Dictionary*, 3d ed., p. 683. (Emphasis added.) In *Neblett v. Smith*, 142 Va. 840, 128 S.E. 247 (1925), the word "estate" was defined in headnote five as follows:

> [A] comprehensive expression including all things real and personal, though the context may show that no such broad definition was proper. The comprehensive definition should attach as a primary proposition and is not to be limited unless there is something in the instrument or in the circumstance in which it was written to indicate it was used in a different sense.

Counsel for the widow claim that the title to the real estate vested in the wife immediately at the time of testator's death and, therefore, the real estate was never a part of decedent's estate as to which commissions would apply. I do not feel this is the rule in Virginia. In the first place, some of the cases cited for this proposition did not involve a will. In the second place, it is not entirely accurate to state "that title in real property vests immediately in the heirs upon the owner's death" (see page 5 of widow's brief) or "that rent accruing after a testator's death belongs to the heirs and does not pass through the estate." These broad statements over-

look the fact that during the period of administration of an estate fee simple title to real estate is not vested absolutely in the heirs or devisees but is vested subject to divestment in the event that the realty has to be sold to satisfy debts. This is particularly true in the case at bar where the Bank as executor was granted the express power by the testator to sell his real estate, carry on any business, settle any claims on any of the decedent's residuary estate and the incomes therefrom and to retain original properties, both real and personal, for such time as the executor shall decide.

Also, the broad statements about immediate vesting of real estate at death overlook the fact that the Bank, as executor, had certain duties and performed certain tasks in connection with the real property. This would include, among other things, the preparation and filing of federal estate tax returns, inheritance tax returns, and other necessary tax forms. Filing of necessary accounts pertaining to the real estate and rentals therefrom and the collection and disbursements of rental income were other duties performed by the Bank. Furthermore, the record indicates that the Bank paid out a substantial amount for back taxes due and had to amend some of the tax returns when the co-executor returned her commission check.

As it turned out, it was not necessary for the Bank to sell any of the real estate to satisfy debts; however, this was a matter which could not be resolved until potential tax liabilities and other debts of the estate had been determined.

I agree with counsel for Scotty Faulconer Elliott that the Bank's commissions, as charged on the real estate, seem high. Of course, the Bank could have compromised or agreed to accept a lower amount than that stated in the will, but apparently, it chose not to do so. If I were to rule that the Bank was not entitled to commissions on real estate under the will, it would still be entitled to reasonable compensation for the work it actually did as to the real estate. This would present serious problems since it is difficult to tell from the record exactly what services were performed. Also, I would be substituting my judgment for the compensation schedule outlined in the will. The compensation schedule provided that the Bank should receive compensation on the corpus or principal of the estate and commissions on all incomes as and when collected by it as executor during the period of administration. I feel that the real estate constituted a part of the corpus or principal of the estate during administration. I further feel that compensation on rental incomes was expressly provided for in the will. If the testator had wished to exempt his real estate from commissions

charged by the Bank, he could have done so under the terms of his will. If the Bank had qualified as executor under such conditions, then no commissions on real estate could have been charged. However, the parties did not so provide, and I will not change their contract.

In *Jones v. Jones*, 222 Ala. 185, 131 So. 564 (1930), the Court held: "where an executor's compensation is a certain proportion of the corpus of the estate, it has been held that such compensation is to be computed both on real and personal property." In *Harrison on Wills and Administration*, § 492(2), it is stated:

> Of course, the testator has the right to use his property as he thinks proper, and, if in express terms or by a fair interpretation of the will, compensation is given, even though in excess of the amount that is usually allowed, the Court will follow the instructions of the will.

Since there is no question that the method of computation of commissions by the Bank was correct according to the fee schedule in the will (see page 25 of widow's brief), the only remaining question is whether the real estate was a part of corpus or principal of the estate during the period of administration. For the reasons stated, I think that it was and that the Bank is legally entitled to the commissions charged. The Commissioner of Account's opinion is affirmed.